O'Fallon Development Co., a Corporation, Plaintiff-Appellee, v. Arthur Reinbold, Lillian Reinbold, Elmer W. Schmidt and Thomas D. Bedell, Partners, d/b/a Home-Brite Co., Defendants-Appellants.

Gen. No. 65–43.

Fifth District.

April 13, 1966.

Rehearing denied May 5, 1966.

Lindauer, Nieman & Lindauer, of Belleville, for appellants.

Sam S. Pessin, of Belleville, for appellee.

EBERSPACHER, J.

This is an action brought by a lessor against lessees for violation of a written lease.

Plaintiff and defendants executed a written lease dated January 19, 1960, for certain hardware premises located in the Southview Plaza Shopping Center located at O'Fallon, Illinois. Defendants went into possession and thereafter on December 22, 1960, said parties executed another lease, identical in all respects except that it was for a larger location, and covered the period March 31, 1961, to March 31, 1965. Paragraph 16 of the lease provided for liquidated damages upon default by lessee and lessor taking possession. Paragraph 28 provided for a written notice to the lessee upon violation of any covenants or agreements therein contained and if such default continued for a period of 10 days after written notice had been sent, then the lessor, without further notice may terminate this lease and reenter upon and take possession of the demised premises. Paragraph 33 of

the lease, and it is this paragraph that is the actual subject matter of this appeal, reads as follows:

"The Lessee agrees to operate its aforesaid business upon the demised premises, that no other use will be made of said premises other than the sale of the items mentioned on Page Two (2) hereof and other commodities and services associated with said business. The Lessee further agrees that said business will remain open everyday of the week excluding Sundays and legal holidays, from the hour of 8:00 A. M. to 5:00 P. M., or any additional period desired by Lessee, and further Lessee agrees to abide by the rules to be hereinafter promulgated by the Lessor or an Association of Tenants (which may include Lessor) for the betterment of the Southview Plaza Shopping Center."

The agreed minimum rental was $6,500 per year, payable monthly in advance. An additional percentage rental was also payable in event lessee's gross sales exceeded a certain figure. The lessor declared the lease terminated for alleged violations of the covenants contained therein and took possession of the property. The plaintiff landlord then brought suit to recover liquidated damages. The defendants filed a counterclaim for damages for forcible eviction from the leased premises. The cause was tried before the court without a jury and judgment rendered for plaintiff for $12,746.74, being the actual amount of loss of rent proved, and against defendants on their counterclaim, from which judgment this appeal is taken. Neither party raises any question as to the amount of damages awarded.

The evidence is undisputed that on May 1, 1962, the plaintiff promulgated the following rules:

"(1) All tenants will maintain adequate stock at competitive prices with shopping centers and similar establishments in the Greater Belleville Area.

172

"(2)  All tenants will maintain an adequate staff of sales people to operate and represent the store.

"(3)  All tenants will maintain the store hours from 9:00 A. M. to 9:00 P. M., six days a week, as previously agreed upon which has been established by the Merchant's Association and O'Fallon Development Company.

"These articles must be followed diligently by each tenant. The only exception to the above articles are those establishments engaged in the service operations which are governed by union contracts."

On May 7, 1962, plaintiff sent notice to defendants that they were in default of the rules and unless corrected within 10 days the lease would be terminated. On June 1, 1962, without further notice, plaintiff's agents padlocked and chained the entrance to the store. Defendants were requested to vacate and the June rental was returned to them by plaintiff. Defendants vacated the premises and plaintiff filed suit claiming liquidated damages in the amount of $18,145.66, being the amount provided under paragraph 16.

It is defendants' contention that there was no violation of the written lease and that the rules promulgated by plaintiff were not in contemplation of the parties at the execution of said lease; that the promulgation of the rules is an attempt to vary the terms of the written contract, that the rule with respect to the hours is in direct contradiction to the express terms of the contract, and that the court erred in admitting evidence with respect thereto. They further point out that despite the language "hereinafter promulgated" that no such rules were appended to or incorporated in the lease, and urge that the words used in the lease and particularly paragraph 33 have definite and precise meaning, and there is no ambiguity, and therefore plaintiff should not have been allowed to present proof to contradict or vary its meaning. They further urge that if the intention of the parties per-

173

■■■■■■■■■■■■■■■■■■■■■■■■

mitted the promulgation of rules subsequent to the execution of the lease, that such promulgated rules, at variance with the express provisions of the lease, could not have been intended to become covenants and conditions of forfeiture and point out that the language of the lease pertaining to forfeiture is based on "covenants herein contained," the language used in both paragraphs 16 and 28, and that no reference is made to forfeiture for any condition not contained in the lease.

■■■■ If the language in a lease is plain and unambiguous, proof aliunde cannot be heard to contradict or vary its meaning or give it a meaning inconsistent with the language used in the instrument. Gale v. United States Brewing Co. of Chicago, 181 Ill App 381. No Association of Tenants was a party to the lease, so it is only reasonable to consider that here was a reference to matters outside the express language of the lease, and we consider that the language used in paragraph 33 "to abide by the rules to be hereinafter promulgated" taken with the fact that no additional rules were later set forth in the contract, created an ambiguity and the court proceeded properly to hear evidence bearing on the intention of the parties. We do not consider the maxim of the law "expressio unius est exclusio alterius" applicable here as to the hours of opening and closing; it is a formula of logic having its most frequent use in the construction of remedial statutes and in a lease where the intention of the parties is obvious that other conditions or provisions are to be made, such maxim is not applicable. In South Parkway Bldg. Corp. v. South Center Dept. Store, 19 Ill App2d 14, 153 NE2d 291, the court said the cardinal rule in the interpretation of a lease is that the court should ascertain and give effect to the intention of the parties. We likewise agree with the language of Gale v. United States Brewing Co. of Chicago, supra, at page 387 where the court said, "The same rules of law are applicable to the construction of leases that are ap-

174

plicable to the construction of other contracts, and where the language of a lease is the subject of construction, the object to be attained is to ascertain if it can be done, the intention of the parties to the instrument and give effect to that intention."

Having determined that there is ambiguity, we examine the evidence and find that the witness Reiger was manager of the store from March 1960 until some time in August 1961, he attended the meetings of Association of Tenants and participated in discussion of the adoption of the hours of 9:00 to 9:00, and that the defendants were members of the Association of Tenants, and that the rules and suggestions of that group were recognized and the store was kept open until 9:00 p. m., during that period. He was succeeded by Kenneth Underwood as manager, who closed the store, according to his testimony, at 6:00 for a period of 3 weeks, and the remainder of the time at 8:00 p. m. The store was not doing a satisfactory amount of business, and a going out of business sale was conducted during the month of March 1962, following which time the store was closed for two weeks. In response to a question as to how late the store was open during the sale, Underwood stated, "I think we kept it open the regular hours, until 9:00 o'clock at that time" and when on cross-examination counsel stated, "At that time you kept open the regular hours of 9:00 o'clock?" he answered, "That is right." A number of merchants in the shopping center testified as to complaints from customers that the hardware store was closed before 9:00 p. m. Defendants do not deny that the hours of 9:00 to 9:00 p. m. were agreed upon by the Association, nor do they deny that they failed to keep the store open until 9:00 p. m. The practice of abiding by the rules of the Association of Tenants was not discontinued because of their unreasonableness and defendants do not here contend that under the circumstances such rule was unreasonable. Under the provisions of paragraph 33

175

lessees were given the right to choose to remain open additional hours, and the evidence shows they considered 9:00 p. m. to be the customary closing time; however, at that time no rule providing for hours other than those of 8:00 a. m. to 5:00 p. m., or such "additional period desired by Lessee" had been promulgated.

As a result it cannot be said that evidence of defendant's keeping the store open, in the absence of a promulgation of a rule, was evidence of anything other than lessees exercising the right specifically given them to remain open "any additional period desired by lessee."

■ ■ A contract is to be construed as a whole, giving meaning and effect to every provision and word, if possible. Belanger v. Seay & Thomas, Inc., 28 Ill App 2d 266, 171 NE2d 418. The words "Lessee agrees to abide by the rules to be hereinafter promulgated by the Lessor or an Association of Tenants for the betterment of the Southview Plaza Shopping Center" must be given their full purpose and meaning. In order to give effect to the intention of the parties, the court may take into consideration the position of the parties, the surrounding circumstances which existed at the time of the execution of the lease, as well as the purpose or object the parties had in mind in entering into the lease. South Park Bldg. Corp. v. South Center Dept. Store, 19 Ill App2d 14, 153 NE2d 291. At the time of the signing of this lease, the Southview Plaza Shopping Center was a new development. The defendants were experienced and sophisticated business people, having successfully been engaged in the retail hardware business for a number of years, in a nearby community. It would be logical to assume that the parties to this lease knew that as the center developed and the shopping habits of the community became known, that certain changes for the betterment of the shopping center and its tenants would have to be made. They were experienced and sophisticated enough to know that, in shopping centers, such as this

176

one, a concerted effort had to be made by all of the tenants or else the center would fail to attract business.

The question then arises as whether such reasonable rule, directly in conflict with the express language of the lease, promulgated more than a year after execution of the lease, can be, and was intended to be, an implied covenant which might be made the subject of a forfeiture.

■■ The courts cannot make contracts for parties, and can declare implied covenants to exist only when there is a satisfactory basis in the express contracts of the parties which makes it necessary to imply certain duties and obligations in order to effect the purposes of the parties in the contract made. Before we will imply a covenant in the express terms of this lease, it must appear therefrom that it was so clearly in the contemplation of the parties, that the hours of closing could be changed by the lessor, that the parties deemed it unnecessary to express it, or that it is necessary to imply such covenant in order to give effect to and effectuate the purpose of the lease, as a whole. Adkins v. Adams (CCA 7th Cir 1945) 152 F2d 489. In a retail business the hours of closing can have a material bearing on the cost of doing business, particularly when such hours extend beyond the normal working day; the problems of services of labor forces that are members of unions was recognized by lessor in the rules promulgated on May 1, 1962, by the exception provided therein. It is to be noted too, that although the lessee agreed to abide by rules for the betterment of the shopping center, that such provision, although in the same sentence as the expressly provided hours of closing, is couched in general language and does not expressly reserve to either the Association of Tenants or Lessor the right to change the hours of closing.

■ Leases are to be most strongly construed against lessors, and forfeitures and provisions such as are found in paragraph 28 are not favored in the law,

177

Earpe v. Schmitz, 334 Ill App 382, 179 NE2d 637. If it were intended, under rules of strict construction that the violation of a rule promulgated by lessor would give rise to a forfeiture, that paragraph should have also contained the power of forfeiture for the breach of any rule promulgated by lessor. Instead, it provides for forfeiture on default on the part of lessee "in the performance or observance of any of the covenants or conditions of this lease." The word "this" refers specifically to the lease. People v. National Box Co., 248 Ill 141, 93 NE 778. Here there is a clear lack of expression that promulgated rules, if any, would be and become a part of the lease as covenants and conditions which could become the subject matter for a declaration of forfeiture.

Under the circumstances here present, there cannot exist an implied covenant between the same parties, in conflict with the express provisions of the lease.

The defendants being deprived of the premises by the lessor, the further obligation of rent ceased, because such obligation had force only from the consideration of the enjoyment of the premises. Auto Supply Co. v. Scene-in-Action Corp., 340 Ill 196, 172 NE 35.

The defendants have offered no evidence of damages on their counterclaim, and the judgment of the trial court against the defendants on their counterclaim should be affirmed.

The judgment of the circuit court of St. Clair County rendered for plaintiff against defendant in the amount of $12,746.74 is reversed and the judgment for plaintiff against defendants on the counterclaim is affirmed.

Affirmed in part and reversed in part.

GOLDENHERSH and MORAN, JJ., concur.