ANTON DASENBROCK *et al.*, Plaintiffs-Appellees, *v.* INTERSTATE RESTAURANT CORPORATION, Defendant-Appellant.

(No. 70-130;

Fifth District—September 1, 1972.

Harold J. Taylor, of Taylor & Taylor, of Effingham, for appellant.

Frank H. Schniederjon, of Effingham, for appellees.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal from an order granting summary judgment in favor of the plaintiffs, Anton and Lillian Dasenbrock, and their son, Clarence Dasenbrock.

Anton and Lillian Dasenbrock were the owners of real estate in Effing-

ham County, Illinois. On February 20, 1966, they executed a written lease with the defendant, Interstate Restaurant Corporation. On April 8, 1967, the Dasenbrocks conveyed the land by quitclaim deed to Clarence Dasenbrock, their son.

On July 19, 1968, Anton and Lillian Dasenbrock filed a notice of default with Interstate. The original complaint and the first amended complaint, which joined Clarence Dasenbrock as a plaintiff, were dismissed on motion. The second amended complaint was filed on December 31, 1969. The complaint was in two counts. Count I alleged that the lessee had defaulted on the lease and owed past due rent to Anton and Lillie Dasenbrock from May 1, 1966, to the date of conveyance. Count II alleged the lessee had defaulted on the same lease and owed past due rent to Clarence Dasenbrock from the date of the conveyance to July 19, 1968.

Plaintiffs and defendant agreed upon a stipulation of facts, which included:

1. That the plaintiffs, Anton and Lillian Dasenbrock were on February 20, 1966, owners of real estate described in paragraph 1 of the second amended complaint, and later, on April 8, 1967, Anton and Lillian Dasenbrock conveyed the real estate to Clarence Dasenbrock, who is presently the owner thereof.

2. That the lease which was executed by the parties in interest in this suit was executed and delivered on February 20, 1966 * * *.

3. That no payments of rent have ever been made by the Lessee to the original lessors or to the present owner, Clarence Dasenbrock, since the date of the execution of the lease up to and including the present time.

4. That notice of default was received by the defendant from Anton and Lillian Dasenbrock on or about July 19, 1968.

5. That no application for any licenses, consents or permits have been made by the lessee to either the City of Effingham building official or to the District Engineer in charge in the area of the location of said real estate, nor has the lessor made any application to either of these two individuals for any licenses, consents or permits. (A, 73-74)

On May 28, 1970, defendant moved for judgment on the pleadings as to Count I. (A, 77) On June 1, 1970, plaintiffs filed a motion for summary judgment as to both Count I and Count II. (A, 83, 89) The court denied defendant's motion and on June 8, 1970, entered a summary judgment on plaintiffs' motion in favor of the plaintiffs in both counts, cancelling the lease and awarding a money judgment for rent from May 1, 1966, to April 8, 1967, to plaintiffs in Count I and a money

judgment for rent from April 8, 1967, to July 19, to 1968, to plaintiff in Count II.

■■ The first issue is whether *any* rent was due under the terms of the lease. In the instant case, lessee is relying upon an interpretation of a single paragraph in the leasehold agreement to exempt himself from liability for rent. However, every paragraph must be read in the light of the entire contract.

■■ "It is generally said that the purpose of interpretation is to become aware of the 'intention of the parties'." (3 Corbin, *Contracts* 55, § 538 (1960).) "The cardinal rule in the interpretation of a lease is that the court should ascertain and give effect to the intention of the parties, and that in so doing the court may take into consideration the position of the parties, the surrounding circumstances which existed at the time of the execution of the lease, as well as the purpose or object the parties had in mind in entering into the lease  *  *  *." *South Parkway Building Corp. v. South Center Department Store* (1958), 19 Ill.App.2d 14, 153 N.E.2d 291, 296; *O'Fallon Development Co. v. Reinhold* (1966), 69 Ill.App.2d 169, 216 N.E.2d 9.

■■ It is a basic rule of contract law that a contract must be read as a whole.

"The terms of a contract are to be interpreted and their legal effects determined as a whole. It is by words and other symbols that are grouped in phrases and sentences and paragraphs and chapters and volumes that meanings are expressed and conveyed to others, not by separate words in a disconnected row. It is true that single words have meanings, often a great many of them  *  *  *. It is quite impossible to determine with which one of those many meanings a word is being used except by considering it in its context." 3 Corbin, Contracts 185—6, § 549 (1960).

"A writing is interpreted as a whole and all writings forming part of the same transaction are interpreted together." Restatement of Contracts, § 235 (c).

The section entitled "PERIOD", establishes a minimum leasehold of twenty years commencing on May 1, 1966. (A, 15) Paragraph (1), "RENTALS", provides that "Lessee shall pay the following rent: $125.00 per month from May 1, 1966 to April 30, 1971". (A, 15) It provides for a rent that increases at five year intervals. These provisions only specify a term of years and a schedule of rents; they do not specify *when* payments are to begin. Nor do they create any duty on the part of the lessee to pay rent.

Paragraph (4), entitled "PERMITS & ORDINANCES", specifies that:

"Lessee agrees to secure from the proper authorities in Lessor's name, with right of assignment, or in the name of Lessee or Lessee's nominee, the necessary licenses, consents and permits, satisfactory to Lessee, for the construction and operation on the premises or any part thereof of a commercial development * * * and for any and all business usually conducted in connection with such a commercial development and Lessor agrees to use his best efforts to secure such licenses, consents and permits as promptly as possible. * * *

No rent shall accrue or be payable hereunder until all the necessary licenses, consents and permits for the construction and operation of said commercial development have been duly obtained, and in case they are not obtained within three (3) months after the date of commencement of the term of this lease, or if obtained, shall thereafter be revoked without fault of Lessee, or if the use of the premises herein demised for any of the purposes enumerated shall be in any manner restricted or prohibited by reason of any law, ordinance, injunction, regulation or order of any properly constituted authority, then Lessee shall have the right at its option to terminate this lease by giving ten (10) days' written notice of its intention so to do and shall thereupon be relieved from all liability hereunder." (A, 17-19)

The record does not reflect that the defendant-lessee ever gave ten days' written notice of termination and we assume that it did not.

Relying primarily upon the second part of Paragraph (4), lessee contends that he is not liable for any rent because no licenses were obtained. We disagree.

■■■ Once it has been established that a contract has been made, the court "will compel performance in accordance with what it believes to be required by good faith and fair dealing". (3 Corbin, Contracts 95, § 541 (1960).) Even though the express words are absent, performance in good faith will be implied by the court. In *Martindell v. Lake Shore National Bank* (1958), 15 Ill.2d 272, 154 N.E.2d 683, an action brought for specific performance by the holder of an option to purchase stock of a new corporation, our Supreme Court held, at pages 690-691, that Illinois law implies the obligations of good faith and fair dealing from all parties to a contract.

"When the instrument is construed in light of all its provisions and with a view to the intent to be gathered from the extrinsic evidence, we cannot agree that the limiting sentence in the option provision was intended by the parties to reduce the agreement to a security arrangement or to shrink the rights expressly granted plaintiff to the status of an offer revocable at the pleasure of the new corporation. Every contract implies good faith and fair dealing between the parties

to it, and where an instrument is susceptible of two conflicting constructions, one which imputes bad faith to one of the parties and the other does not, the latter construction should be adopted."

Reading the contract as a whole, it appears that the beginning of paragraph (4) limits the condition that no rents would accrue until the permits were obtained. This section of the lease implies a promise on the part of the lessee to perform in good faith an obligation to use reasonable efforts to obtain the necessary licenses within a reasonable time. Since the lessee failed to act in good faith and make any effort to secure the licenses, his obligation to pay rent did arise. Since the lessee agreed to secure the licenses, the lessor's promise to use "best efforts" may reasonably be interpreted as a promise not to do anything that would hamper the lessee's application, *i.e.*, to do what he could to aid the lessee in obtaining the licenses.

*Carlton v. Smith* (1936), 285 Ill.App. 380, 2 N.E.2d 116, involved a written contract under which the buyer promised to buy a business if he could get a satisfactory lease from the owner of the building where the business was located. The clause of the contract of sale specified: "Parties hereto agree that this agreement is subject to the procurement of a satisfactory lease between second party (buyer) and owner of building wherein business is now located". In reversing the trial court's granting of a demurrer for the defendant-buyer, the court held, at 116-17, that:

"The enforcement of the contract was by its terms dependent upon 'the procurement of a satisfactory lease between second party and owner of the building wherein business is now located.' This clearly contemplated that there should be some effort on the part of the appellee to procure from the landlord a lease which was satisfactory to him. If he could, without good reason, refrain from doing so, then the agreement, at his whim, could be rendered nugatory and the execution of the contract an idle and meaningless ceremony. We cannot ascribe to the parties, as evidenced by the language of the contract, such an intent; on the contrary, it is our conclusion that they purposed that appellee should, in good faith, attempt to secure from the landlord a lease which was satisfactory to him, and failing in the endeavor, should be excused from the performance of his contract."

■■ Furthermore, in an action for rent claimed to be due under a written lease which provided that if the license to conduct a saloon business on the premises at any time during the term was not issued, or if issued was revoked, the lessee would have the right to terminate the lease on thirty days' notice, the defendant-lessee having made no application to renew the license on its expiration was held not to be

entitled to terminate the lease. (*Gale v. U.S. Brewing Co.* (1913), 181 Ill.App. 381.) Therefore, defendant Interstate Restaurant Corporation, having made no application for the licenses, did not act in good faith and would not have been able to terminate the lease.

■■ The lease in question does not specify when payments are to begin. Certainly a reasonable time would be implied for the securing of licenses and permits before any rent would accrue or be payable. Looking to the intention of the parties as expressed in this lease, it may reasonably be concluded that the three month period, May 1, 1966—August 1, 1966, was intended to be the period within which licenses could be obtained and after which the duty to pay would begin. Our conclusion is supported by the fact that the lessee was afforded the option of termination at the end of a period of three months after the commencement of the lease. This termination provision implies that after three months the duty to pay begins.

■■ Any contrary interpretation would render the contract void. If the obligation to pay did not arise at the end of the three month period, but was considered a promise to pay at some time in the future at the lessee's option, the promise would be indefinite and the contract would lack consideration. "Words of promise do not constitute a promise if they make performance entirely optional with the purported promisor. Such words, often referred to as forming an illusory promise, do not constitute consideration for a return promise". (Restatement, Contracts, Tent. Draft No. 2 sec. 78, comment d, p. 47 (1965).) Furthermore, as the court noted in *Carlton v. Smith* (1936), 285 Ill.App. 380, 2 N.E.2d 116, 117, if the buyer could make no effort to procure the necessary lease, "then the agreement, at his whim, could be rendered nugatory and the execution of the contract an idle and meaningless ceremony". Thus, if the time for performance of this contract was left entirely to the lessee's discretion, the contract would be void and meaningless.

■■ Appellant next contends that after the Dasenbrocks' conveyance of the land, plaintiffs in Count I no longer had any interest on which to base a complaint for failure to pay rent. As early as 1882, the Supreme Court held that rent was to be defined as a certain profit issuing yearly out of the land. A rent arrear is a chose in action and not an incident of the land to pass as such to a grantee by a grant of the land. (*Scully v. People* (1882), 104 Ill. 349, 351; *People ex rel. Hargrave v. Phillips* (1946), 394 Ill. 119, 67 N.E.2d 281, 283. See also *Bordereaux v. Walker* (1899), 85 Ill.App. 86.) Therefore, once it is established that rent was due, Anton and Lillian Dasenbrock's cause of action for past due rent was not extinguished by a conveyance of the land.

Having established that rent was due, it is necessary to examine

whether proper notice of default was given to lessee. Paragraph (8), "DEFAULT", provides that:

"Anything herein contained to the contrary notwithstanding, Lessor agrees not to exercise any landlord's remedies against Lessee by reason of any default unless and until Lessor shall have given to Lessee written notice by registered mail of the default and unless Lessee shall have failed to remedy such default within a period of fifty days from the giving of such notice." (A. 21)

The lease specifically designates Anton and Lillian Dasenbrock as the lessor. (A. 13)

According to the terms of the lease, the lessor could not sue until notice of default was given and the lessee failed to remedy such default within fifty days. Written notice of default was given to the defendant by Anton and Lillian Dasenbrock on July 19, 1968, (A. 9), after they had conveyed their land to Clarence Dasenbrock. Clarence Dasenbrock did not give any written notice of default to Interstate. When suit was filed on July 9, 1969, a year after notice had been served, the defendant had failed to remedy the default.

■■ The issue is whether the notice of default given by Anton and Lillian Dasenbrock after they had conveyed their land was sufficient. Since they retained their right to receive past due rents, even after the conveyance, by implication of the terms of the lease, they also retained the power to file notice of default with the lessee. The notice requirement did not effect the accrual of their right to receive rent. It only acted as a limitation to the bringing of an action and it provided the lessee an opportunity to remedy any default, which defendant failed to do.

Defendant also argues that Clarence Dasenbrock could not rely on the former lessors' notice since it was his exclusive duty to give notice of default, which he failed to do.

■■ Paragraph (17) of the lease provides:

"No change in ownership, assignment of this lease or assignment of rentals hereunder *shall be binding upon lessee* unless and until lessee has been furnished with a true copy of the instrument evidencing such transfer or assignment."

There is no evidence that the Dasenbrocks ever furnished the lessee with a copy of the quitclaim deed transferring the property to their son. In the first amended complaint, Clarence Dasenbrock was joined as a party plaintiff and there appears an allegation that a conveyance did take place. This is the first reference in the record to the conveyance. At the time of giving of notice by the Dasenbrocks, then, the defendant had no notice of the conveyance and, accordingly, the change in ownership

would not have been binding on the lessee and the notice of default was properly given by the Dasenbrocks. Since the change in ownership would not have been binding, the only persons able to give the required notice of default would have been the original lessors.

Accordingly, the judgment of the trial court as to Count II is affirmed; the judgment as to Count I is modified to reflect that the defendant is liable and should pay to plaintiffs the rent which accrued between August 1, 1966, and April 8, 1967.

Judgment on Count I affirmed as modified.

Judgment on Count II affirmed.

G. MORAN and CREBS, JJ., concur.