In the

# United States Court of Appeals

## For the Seventh Circuit

―――――――――――

No. 24-2010

SUZANNE WOLF,

*Plaintiff-Appellant,*

*v.*

RIVERPORT INSURANCE COMPANY,

*Defendant-Appellee.*

―――――――――――

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 20-cv-7084 — **Steven C. Seeger**, *Judge.*

―――――――――――

ARGUED DECEMBER 11, 2024 — DECIDED MARCH 20, 2025

―――――――――――

Before EASTERBROOK, BRENNAN, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* More than four years after Suzanne Wolf suffered multiple pelvic fractures in a car crash with an underinsured motorist, Riverport Insurance Company paid Wolf benefits it owed her under her employer's general commercial liability policy. Wolf then filed this suit against Riverport, alleging that Riverport unreasonably delayed payment. She sought relief under section 155 of the Illinois Insurance

Code, 215 ILCS 5/155(1), which provides a supplemental remedy for an insurer's unreasonable delay in settling an insurance claim in an action for breach of contract.

The district court granted judgment on the pleadings to Riverport under Rule 12(c) of the Federal Rules of Civil Procedure. On appeal, Wolf challenges this decision, as well as a prior decision denying discovery. We reject both challenges. Wolf argues that Riverport breached a contractual duty to investigate and settle her claim for underinsured motorist benefits in good faith, but the policy Riverport issued to her employer contains no such duty. Accordingly, Wolf lacks a viable legal theory to support her claim—and the district court properly granted Riverport's motion for judgment under Rule 12(c). Without a viable breach-of-contract theory, Wolf also cannot show that the court's discovery decision actually and substantially prejudiced her: Her claim fails to meet the Rule 12(c) standard regardless of whether she could have obtained evidence that Riverport acted in bad faith. We therefore reject her challenge to the court's discovery decision without reaching the merits.

## I. Background

Wolf suffered multiple pelvic fractures after the driver of another vehicle ran a red light and struck her vehicle as she crossed an intersection. The driver carried only $100,000 of liability insurance. After accepting this amount to resolve her claim against him, Wolf filed claims for underinsured motorist benefits with her personal automobile insurer and her employer's general commercial liability insurer, Riverport, to cover the remainder of her losses. Wolf resolved her claim with her personal insurer for the $150,000 policy limit. She

eventually resolved her claim with Riverport, too, but only after four years of negotiations ending in arbitration.

Under the policy Riverport issued to Wolf's employer, Riverport agreed to "pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'underinsured motor vehicle,'" subject to a $1,000,000 liability limit for any one accident. The parties agreed that Wolf qualified as an insured, but they disagreed about the value of her claim. Wolf demanded the policy limit. Two years later, Riverport offered her $100,000. In response, Wolf requested arbitration. Another two years passed, and Riverport agreed to arbitrate the dispute. The arbitration panel awarded Wolf $905,000. Soon after, Riverport sent her a check for the award less the payouts she had received from the driver's and her personal insurers.

This action, which Wolf commenced after Riverport's payout, concerns the parties' protracted negotiations. Wolf filed suit in the Circuit Court of Cook County, and Riverport removed to federal court, invoking diversity jurisdiction. In her second amended complaint, Wolf alleges that Riverport failed to promptly respond to communications; delayed its investigation into her claim; attempted to settle her claim for an unreasonably low amount, forcing her to pursue arbitration; and delayed the arbitration, among other related conduct. After answering this complaint, Riverport moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. The district court granted the motion.

## II. Discussion

We review a district court's grant of judgment under Rule 12(c) de novo. *Citizens Ins. Co. of Am. v. Wynndalco Enters., LLC,*

70 F.4th 987, 994 (7th Cir. 2023). Rule 12(c) states, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Either party can use a Rule 12(c) motion "to dispose of the case on the basis of the underlying substantive merits." *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993). A Rule 12(c) motion also provides a vehicle for the defendant to raise several of the defenses enumerated in Rule 12(b)—including failure to state a claim upon which relief can be granted—after the close of the pleadings. Fed. R. Civ. P. 12(h)(2)(B). When a defendant files a Rule 12(c) motion to challenge the sufficiency of the complaint, as Riverport did here, the motion performs the same function as a Rule 12(b)(6) motion to dismiss—and the complaint must meet the Rule 12(b)(6) standard for the suit to survive. *See Wynndalco*, 70 F.4th at 994; 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed. Aug. 2024 update) [hereinafter Wright & Miller].

The Supreme Court changed the Rule 12(b)(6) standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), adopting a plausibility standard and abandoning the "beyond doubt" and "no set of facts" standard from *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). *See* 5B Wright & Miller § 1357 (4th ed. July 2024 update). By implication, *Twombly* and *Iqbal* also changed the Rule 12(c) standard. As the district court noted, however, some of our decisions reviewing judgments granted under Rule 12(c) still refer to the abrogated *Conley* standard. *See Wynndalco*, 70 F.4th at 994; *Scottsdale Ins. Co. v. Columbia Ins. Grp.*, 972 F.3d 915, 919 (7th Cir. 2020); *Landmark Am. Ins. Co. v. Hilger*, 838 F.3d 821, 824 (7th Cir. 2016). We therefore take this opportunity to clarify that under Rule 12(c), as under Rule 12(b)(6), the factual allegations in the complaint, accepted as true, must

"raise a right to relief above the speculative level" for the suit to proceed any further. *Twombly*, 550 U.S. at 555.

In applying this standard, we consider the pleadings and any exhibits attached thereto (here, Wolf's second amended complaint and the insurance policy). *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). To meet the plausibility standard, Wolf needs a recognizable legal right. *See, e.g.*, *McCready v. White*, 417 F.3d 700, 703 (7th Cir. 2005) (claims properly dismissed for want of a right of action). And the factual allegations in her complaint must support a reasonable inference that Riverport can be held liable for a deprivation of that right. *See Ashcroft*, 556 U.S. at 678.

Wolf seeks relief only under section 155 of the Illinois Insurance Code, which permits a court to award attorney's fees, costs, and statutory damages

> [i]n any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable . . . .

215 ILCS 5/155(1).

Section 155 "provides a remedy in a specified type of 'action' (case); it does not create a cause of action; it presupposes rather than authorizes a suit." *Hennessy Indus., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 770 F.3d 676, 679 (7th Cir. 2014); *see also Moles v. Ill. Farmers Ins. Co.*, 229 N.E.3d 856, 861–62 (Ill. App. Ct. 2023). That is, section 155 supplements the remedies otherwise available in an action for breach of contract, breach

of the tort-based duty to settle (inapplicable here), or another tort. *See Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d 1126, 1131 (Ill. 2001) (confining the tort-based duty to settle to "the narrow context of cases involving an insurer's obligation to settle with a third party who has sued the policyholder"); *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 904 (Ill. 1996) (noting that section 155 alters the usual rule that attorney's fees and punitive damages are unavailable for a breach of contract).

To obtain the relief Wolf seeks, then, it is not enough for her to allege facts showing that Riverport caused a "vexatious and unreasonable" delay in settling her claim. She must also allege facts showing a plausible breach of a right conferred elsewhere. This appeal turns on whether she has.

Wolf asserts that contract law creates a relevant cause of action. Under Illinois law, the elements of a breach-of-contract claim are (1) a valid and enforceable contract; (2) performance by the plaintiff; (3) breach by defendant; and (4) resulting injury to the plaintiff. *See Batson v. Oak Tree, Ltd.*, 2 N.E.3d 405, 414 (Ill. App. Ct. 2013). The parties' dispute concerns the breach element. Did Riverport's negotiation conduct, as alleged by Wolf in her complaint, plausibly breach some obligation under the policy?

"[A]n essential function of contracts is to allocate risk[.]" *Mkt. St. Assocs. Ltd. P'ship v. Frey*, 941 F.2d 588, 595 (7th Cir. 1991). Insurance policies, which are contracts, exemplify this function: "The essence of an insurance policy is a promise by the insurer to compensate the insured for the loss of something of value that is covered under the policy, thereby shifting the risk of loss from the insured to the insurer." *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 890 (7th Cir. 2011). Under the policy at issue here, for example, Riverport

provided underinsured motorist coverage to Wolf in exchange for premiums paid by her employer. A failure to pay Wolf for covered losses would breach the contract. But by the time Wolf filed this suit, Riverport had paid Wolf. The contract must therefore impose some other obligation on Riverport—and Riverport must have plausibly breached that obligation—for Wolf's suit to proceed.

Beyond their risk-allocation function, some contracts also "set in motion a cooperative enterprise, which may to some extent place one party at the other's mercy." *Mkt. St.*, 941 F.2d at 595. The contractual obligation of one of the parties might be contingent upon a condition particularly within the power of that party. *See, e.g.*, *Dasenbrock v. Interstate Rest. Corp.*, 287 N.E.2d 151, 154 (Ill. App. Ct. 1972) (lease stated that no rent would be due until the lessee obtained all the necessary licenses, consents, and permits for construction of a commercial development). Or a contract might vest one of the parties with broad discretion in performing a term of the contract. *See, e.g.*, *Diamond v. United Food & Com. Workers Union Loc. 881*, 768 N.E.2d 865, 870 (Ill. App. Ct. 2002) (a local union's bylaws vested authority in the local union's president to "interpret the bylaws and rules of the Local Union").

In these circumstances, Illinois courts have invoked the implied covenant of good faith and fair dealing. *See Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443–45 (7th Cir. 1992) (collecting and interpreting Illinois cases); *Dayan v. McDonald's Corp.*, 466 N.E.2d 958, 971–72 (Ill. App. Ct. 1984) (collecting cases). The covenant operates as a rule of construction (not a source of independent duties) under Illinois law. *See Voyles*, 751 N.E.2d at 1131. Applying this rule, each Illinois court in these collected cases construed the contract to oblige the party

vested with contractual discretion "to exercise that discretion reasonably, with proper motive and in a manner consistent with the reasonable expectations of the parties." *Beraha*, 956 F.2d at 1444 (emphasis omitted) (citing *Dayan*, 466 N.E.2d at 972); *see also*, *e.g.*, *Dasenbrock*, 287 N.E.2d at 155 (implying a contractual obligation on the part of the lessee to obtain the permits); *Diamond*, 768 N.E.2d at 871 (implying a contractual obligation on the part of the local union's president to "interpret[] the bylaws in a reasonable manner").

Under Wolf's interpretation, the policy at issue here vested Riverport with broad discretion to investigate and settle her claim for underinsured motorist benefits—and the implied covenant of good faith and fair dealing obliged Riverport to exercise this discretion reasonably. This is the duty Wolf argues Riverport breached. Applying Illinois law, however, we do not find any basis in the policy to invoke the implied covenant of good faith and fair dealing.

Wolf pins her interpretation on a provision in the business auto coverage form within the policy. This form imposes on Riverport a duty to indemnify an insured for the insured's bodily-injury liability to a third party, as well as an underinsured motorist's bodily injury liability to an insured (through an endorsement, which supplements the standard coverage).[*]

---

[*] Under the business auto coverage form, Riverport promised to "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' … caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" The underinsured motorist coverage endorsement adds coverage for "all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'underinsured motor vehicle,'" if the damages "result from 'bodily injury'

In another provision—the provision upon which Wolf re-
lies—the form imposes on Riverport the "duty to defend any
'insured' against a 'suit' asking for [covered] damages," with
"suit" defined as a civil proceeding in which "[d]amages be-
cause of 'bodily injury'… are alleged." In the same provision,
the form grants Riverport "the right" to defend any insured
against a suit by a third party seeking damages for harm al-
leged within coverage. It further states that Riverport "may
investigate and settle any claim or 'suit' as [Riverport] con-
sider[s] appropriate."

Wolf argues that this contractually vested discretion to in-
vestigate and settle claims extends to claims *by* insureds
against Riverport for underinsured motorist benefits. But Illi-
nois law directs us to read contractual language in context, *see
Matthews v. Chi. Transit Auth.*, 51 N.E.3d 753, 776 (Ill. 2016),
and in context, we conclude that the clause at issue grants
Riverport this discretion as part of the right to defend in-
sureds. That is, under the plain language of the policy, the
right to defend insureds includes the right to investigate and
settle claims, or to control the defense. The right to defend in-
sureds does not apply in a suit by an insured against River-
port—so neither does the right to control the defense.

To be sure, Riverport had discretion over the extent of its
investigation into Wolf's claim and its settlement efforts.
Riverport exercised this discretion by rejecting Wolf's settle-
ment offer. But this right to exercise discretion came from out-
side the provision Wolf cites. Due process alone would vest
Riverport with the right to defend itself and control its own

---

sustained by the 'insured' caused by an 'accident.'" Unmodified provi-
sions of the coverage form apply to the endorsement.

defense (as distinct from an insured's defense, which explains why the provision at issue would apply only to an insured's defense). *See Richards v. Jefferson County*, 517 U.S. 793, 798 (1996) (explaining that constitutional due process rules reflect "our deep-rooted historic tradition that everyone should have his own day in court") (internal quotation marks and citation omitted). In addition, an insured has a contractual remedy for a refusal to pay or an indefinite payment delay by Riverport without needing to resort to the implied covenant of good faith and fair dealing: The insured can bring an action under the policy for the proceeds due under the policy. *See Cramer*, 675 N.E.2d at 903–04 (refusing to recognize an extracontractual "duty to settle" first-party claims made by a policyholder against an insurer because the "policyholder does not need a new cause of action to protect him from insurer misconduct where an insurer refuses to pay").

In sum, under the terms of the policy, Riverport did not have an implied contractual obligation to investigate and settle Wolf's claim against it for underinsured motorist benefits in good faith because (1) the policy did not specifically vest Riverport with discretion to investigate and settle her insurance claim; and (2) Wolf had a contractual remedy for a refusal to pay or payment delay by Riverport (an action for the proceeds due under the policy, which is now moot). Both reasons distinguish cases such as *Diamond*. Therefore, Wolf's breach-of-contract theory fails, and the district court properly granted judgment under Rule 12(c).

Our interpretation of the policy also resolves the final issue: Wolf's appeal of a discovery decision. In the district court, Wolf filed a motion to compel Riverport to produce documents on Riverport's privilege log. The magistrate judge

supervising discovery denied the motion in part, and the district judge affirmed. A district judge reviews a magistrate-judge discovery decision for clear error, and we review the district-judge decision for an abuse of discretion. Fed. R. Civ. P. 72(a); *Domanus v. Lewicki*, 742 F.3d 290, 295 (7th Cir. 2014); *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997). "We also will not reverse the district court's decision absent a clear showing that the denial of discovery 'would result in actual and substantial prejudice to the complaining litigant.'" *Weeks*, 126 F.3d at 943 (quoting *Searls v. Glasser*, 64 F.3d 1061, 1068 (7th Cir. 1995)). Because Wolf has not identified a relevant duty under the policy, she cannot show that the district-judge decision denying discovery actually or substantially prejudiced her. Additional evidence about Riverport's conduct cannot save her breach-of-contract claim. We thus reject Wolf's challenge to the district court's discovery decision without reaching the merits of that decision.

*     *     *

The judgment of the district court is

AFFIRMED.