Burke v. General Outdoor Advertising Co., Appellant.

Argued May 2, 1933.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Robbin B. Wolf*, of *McCreery & Wolf*, for appellant.

*George Wasser*, and with him *Louis F. Adelman*, for appellee.

OPINION BY STADTFELD, J., October 2, 1933:

This is an appeal by General Outdoor Advertising Company, Inc., defendant, from a judgment on a verdict in favor of Mrs. N. J. Burke, plaintiff, in an action of assumpsit for the recovery of rent under a lease. The plaintiff, by three written agreements, identical in form, on August 4, 1927, leased to defendant the entire roof of the building at No. 838 Columbus Avenue, near Brighton Road, the roof of the building at No. 1801 Brighton Road corner of Columbus Avenue, and the roof of the building at the corner of Irwin and Columbus Avenue in the city of Pittsburgh, a separate lease being executed for each roof. The buildings at No. 838 Columbus Avenue and at No. 1801 Brighton Road are at a corner, being separated by another building also owned by plaintiff, but not under lease to the defendant.

Each lease was for a term of five years, and the yearly rental for each location was $750 payable in advance in equal semi-annual installments. Defendant is in the business of erecting and maintaining out-door advertising signs. Each lease contained the following provision: "...... if the tenant be prevented by authorities having jurisdiction from constructing and/or maintaining its signs on said roof, this lease shall terminate at the option of the tenant,

on fifteen days notice given to the landlord by registered mail, and the landlord agrees thereupon to return to the tenant any rent paid in advance for the unexpired term.''

The tenant paid the rent regularly until February 4, 1929, after which it ceased to do so, and notified the plaintiff in writing by registered mail on March 29, 1929, that it was giving 15 days notice of its intention to terminate the leases, in accordance with the provision above quoted. In its notice, it specified, as to the first two properties, above referred to, that the bureau of building inspection had refused permission to construct and/or maintain advertising sign structures on said roofs on the ground that the latter were unsafe for said use; and as to the third property on the ground that such use would be violative of the zoning ordinance in force and effect in the City of Pittsburgh.

At the trial of the case plaintiff offered the leases in evidence with undenied averments in the statement of claim that an installment of rent had not been paid and rested. Defendant then undertook to prove that ''it was prevented by authorities having jurisdiction from constructing its signs on said roofs,'' and gave notices of cancellation. No rent was paid thereafter.

As to the first two properties described above it appeared that one Eugene Ingold, city sign inspector, upon being apprised by the engineer or agent of defendant company some time prior to March 26, 1929, of the latter's desire to erect signs on the roofs of said properties, made at least two personal inspections of the roofs and their location, and came to a definite conclusion that it was not safe to erect and maintain any signs on those two roofs and forbade their construction. He took copies of leases of plaintiff to defendant company and wrote across the face thereof: ''Permit refused. March 26, 1929. Eugene Ingold, Insp. City of Pittsburgh.''

The superintendent of building inspection also issued an official order refusing permit for construction of any sign on the roof of the property third above described, because the location was classified as "a residential," wherein commercial signs were forbidden by the provisions of the zoning ordinance.

There was no evidence as to any written application for permit and no record thereof by the bureau, no records being kept of applications which are refused. There was some testimony that a written application for permit for the third property had likely been made; because of the reference thereto in the order of the bureau refusing the same. No plans or specifications of the proposed signs or any of them were offered in evidence, nor did the testimony show that any had been filed with the bureau.

Eugene Ingold, inspector of signs, called as a witness on behalf of defendant testified that he had made at least two inspections of the premises which disclosed that they were "old buildings," in a "rattletrap neighborhood," roofs too old; and old building between the leaseholds of the first two properties, held together by hog chains and which Ingold suspected defendant might try to use as a base for anchors or supports, although not then under lease to defendant but owned by plaintiff; that there was a clean sweep of winds from the river and a school building close by, with many children coming and going. The bureau regulations allowed only iron signs on roofs and he would not permit the erection of iron signs on the roofs in question. He was unwilling to risk signs at that location for "fear ...... more than anything else" that either during the construction or maintenance of the sign a piece of metal might fall and injure one or more children. He condemned the *locations generally as hazardous to public safety and directed defendant's engineer and agent, Dailey, to "cut*

*them out altogether.''* The good faith. of the inspector's conclusion and decision was not questioned.

As to the third property, defendant offered in evidence the zoning ordinance of the City of Pittsburgh, the zoning map showing the location of the property as being within the prohibited area, and the order of the bureau refusing the permit.

Upon the conclusion of the trial, the trial judge affirmed plaintiff's request for binding instructions and a verdict was rendered in favor of plaintiff for the full amount of her claim. Motions ex parte defendant for new trial and for judgment non obstante veredicto were overruled by the court en banc in an opinion by EGAN, J. From the judgment entered on the verdict this appeal is taken by defendant.

The lower court predicated its opinion on the ground that the defendant had not met the burden of proof; that it had offered no testimony tending to show that any application as to the first two properties had been made to the superintendent of the bureau, or that the latter had refused a permit; that the only testimony as to any application was that of Dailey, formerly in defendant company's employ as engineer and agent, that he made a verbal application to Ingold at some period of which he was uncertain; that defendant produced no copies of an application, or of plans or specifications; that it was bound to show that it had made a bona fide and reasonable effort to secure a permit to erect a sign, of a size and weight, which, was in conformity with the size and strength of plaintiff's buildings. The court further held that defendant was bound to know the restriction in the zoning ordinance as to the third property referred to, at the time it entered into the leases. It was also of the opinion that the tenant, defendant company, was not restricted to the use of the roofs only for the purpose of erecting advertising signs on it. With these conclusions of the lower court we can not agree.

Under the ordinance of the City of Pittsburgh, approved July 3, 1913, offered in evidence by the defendant, it is provided, inter alia, under Section 5, ......
"no sign on top of any building, and no sign or signboard which is on a public highway, or sufficiently close to a public highway to become dangerous to the traveling public, shall be maintained, or hereafter erected, until a permit therefor shall first be obtained from the department of public safety, through the bureau of building inspection authorizing the construction thereof, as hereinafter provided. ......" ·

As the locations had been condemned generally as hazardous to public safety, so far as regards the first two properties, and defendant had been directed to "cut them out altogether," the filing of a formal application, or of plans and specifications, would have been an idle gesture, and would not have overcome the basic objection of the department. Of what use would a specification of size or weight of a sign avail, in view of the fact that the inspector would not let any metal sign whatever be constructed on the roofs in question because of the wide sweep of wind, proximity to the school, and other reasons involving public safety? The specifications become material only when the *location* is approved.

We see no merit in the objection that the superintendent of the bureau had not *personally* passed upon the application for a permit or *personally* refused it. ·

Ingold was a regular subordinate to the superintendent, and had been in charge of the inspection of signs in the City of Pittsburgh for upwards of seventeen years. His authority or the extent thereof was not questioned. It will hardly be contended that in a large city, with the multitude of matters coming before the heads of departments for disposition, the latter must personally perform all the duties pertaining to the office. This would impose a physical impossibility.

The court below held that under the leases "the tenant was not restricted to the use of a roof only for the purpose of erecting advertising signs on it." We think the plain provisions of the leases show that the purpose was to use the roofs for placing or locating advertising signs. Assuming that appellant might have used the roofs for other purposes, the fact still remains that the leases gave appellant the option to cancel, if prevented from using the roofs for its signs. The defendant was willing to lease the roofs and pay for them until it was determined that the authorities would not permit them to be used. It could not determine in advance what the action of the authorities would be, and it was willing to pay until that action was adverse; but it was not bound to carry the matter by appeal to any higher tribunal; it could rest on the action of the authorities duly made. As to the first two properties the court should have left it to the jury to determine whether the defendant had applied in good faith for a permit and been refused—the application to the inspector of signs was enough to take the case to the jury. The court should not have directed verdict for plaintiff.

As to the third property above referred to, the zoning regulations, as interpreted by the proper officer, prevented the erection of the sign and there could be no recovery as to it. There was nothing for the jury to pass upon as respects the zoning regulations. Nor was there anything wrong, or any estoppel against defendant in leasing a site for a purpose that would be illegal without the permission of the authorities, under a provision that the lease would be surrendered and the rent would cease if the permission or consent could not be obtained. We have an analogous example in the days of the former liquor license law where a person rented a building to be used for saloon or restaurant purposes, and provided that he could surrender the lease and not pay any further rent if he

could not obtain a license from the court. He pays the rent, without using the property, until the court passes on his application for license. If it is refused, he surrenders the lease. He is not bound to appeal to a higher court, or to keep on paying rent after the court has decided that he cannot have a license. The agreement is not invalid as contrary to public policy. It does not contemplate the doing of an illegal act. It makes provision for a use which will be strictly legal if consented to by the authorities, with a right of surrender in case the authorities will not consent. We do not think that the case of Schulte, Inc. v. Gude Co., 73 P. L. J. 1035, conflicts with the foregoing. There the lease provided that the tenant could cancel if prevented by law from using the property for sign purposes. The tenant built a long sign which covered nine windows, in direct violation of the fire code, and because interrupted in this particular use, sought to cancel the lease. The law in that case did not forbid the use of the roof for signs but forbade only the covering of windows. There was, therefore no valid right to cancel. The parties did not contemplate a use for advertising which would close up the windows of the building, and hence such a use, forbidden by ordinance, could not have been within the meaning of the lease. That case, however, in the opinion of Evans, J., goes further than that, and attempts to hold that the parties can not provide for a defeasance or surrender if the lessee is not able to use the leased premises for the purpose the parties had in mind. It is in that respect obiter dictum. There is no impropriety in leasing a building for a use not now legal, if it is not contemplated that the building will be used until it may be lawfully done, or to provide that in case the building can not be so used, by reason of failure to obtain such consent or authority, the lease may be surrendered. There is nothing to prevent such a stipula-

tion on the ground of public policy. It contemplates abiding by the law, not its violation.

The assignments of error are sustained, the judgment of the court below is reversed and a venire facias de novo is awarded.