DiBenedetto, Appellant, *v.* DiRocco.

Argued November 18, 1952.   Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Jacob S. Richman,* with him *Philip Richman* and *Richman & Richman,* for appellant.

*Samuel B. Brodsky,* with him *Alexander Brodsky* and *Brodsky & Brodsky,* for appellees.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, January 5, 1953:

In this action for specific performance of a contract for the sale of real estate the court below—in our opinion erroneously—held that the agreement was lacking in mutuality of obligation; accordingly it sustained preliminary objections and dismissed plaintiff's bill in equity.

In the written agreement between the parties, dated March 11, 1949, defendants, the owners of premises 6441 Haverford Avenue, Philadelphia, agreed to sell that property to plaintiff for the sum of $8,500, of which $100 was to be paid, and was paid, at the time of the signing of the agreement, and the balance of $8,400 in cash at the settlement; by written addition to the agreement made June 21, 1949, plaintiff was to pay a further sum of $602. There were two provisions in the agreement which have given rise to the present controversy. The one was that "In the event that the buyer *cannot* make the settlement, he may cancel this agreement, without any further liability on his part, and deposit money returned." The other was that "It is hereby further agreed that the purchaser will give to the seller six (6) months notice prior to July 1, 1951, of his intention to exercise the

herein agreement to purchase, . . . ." Settlement was to be made on or before July 1, 1951, said time to be the essence of the agreement. The agreement was signed by plaintiff and by one P. DiBenedetto as agent for defendants, but defendants themselves added: "we hereby approve the above contract," and signed the agreement with seals opposite to their names.

On December 7, 1950, plaintiff's attorneys, acting on his behalf, wrote to defendants advising them that, in accordance with the clause as to the giving of six months' notice prior to July 1, 1951 of plaintiff's "intention to exercise the agreement to purchase," they thereby gave notice of his intention to make settlement on that date or the nearest legal date thereto. On June 20, 1951, the same attorneys wrote to defendants, enclosing settlement certificate and informing them that arrangements had been made for settlement at the Broad Street Trust Company on Friday, June 29, 1951, at 3 P.M. On that day and at that time plaintiff appeared at the Trust Company, ready, willing and able to carry out the terms of the agreement on his part to be performed, but defendants failed to appear and have ever since refused to convey title.

The first question in the case is whether plaintiff, by reason of the first of the two clauses above quoted, had an absolute, arbitrary right to cancel the agreement without any further liability on his part. We think that he had no such right. The determinative, crucial word in that regard is *"cannot"*. "Cannot" connotes, not unwillingness, but inability; (cf. *Hannock v. Tope & Tope,* 77 Pa. Superior Ct. 101, 104; *Wilker v. Jenkins,* 88 Pa. Superior Ct. 177). If defendants had brought action against plaintiff to compel performance of his agreement to purchase the property he could have successfully defended only by proving that he was *unable* to complete the transaction, not

merely that he did not *desire* to do so. Plaintiff, however, by notifying defendants more than six months prior to the time fixed for settlement that it was his intention to make settlement at the time specified, admitted thereby that he was *not unable* to make settlement and therefore that he had no *right* to cancel the agreement. The agreement constituted, therefore, a contract binding on both parties alike, and did not lack mutuality of obligation.

Even were we to assume, however, that the agreement did not obligate plaintiff from the very beginning but should be interpreted as the mere grant of an *option* to him to purchase the property, he certainly became bound when the notice of December 7, 1950, was given. The agreement being under seal, and accompanied by the payment of $100 at the time of its execution, there was consideration sufficient to entitle him to the right to exercise the option, and even had there been no consideration the exercise of the option before any revocation of it by defendants converted it into a contract with mutuality of obligation: *Driebe v. Fort Penn Realty Co.*, 331 Pa. 314, 200 A. 62; 17 C.J.S. 449, §100.d.

Defendants question the legal sufficiency of the notice of December 7, 1950, on the ground that it was not shown that the agents who wrote the letter were authorized so to do by plaintiff in writing. This overlooks the well established principle that the Statute of Frauds does not require an agreement for the sale of real estate to be signed by the purchaser but only by the "parties making or creating" the interest in the land: *Stevenson v. Titus, Admrs.*, 332 Pa. 100, 2 A. 2d 853.

Decree reversed and the record remanded with a procedendo; costs to abide the event.