552 A.2d 265

**Earl H. JAMISON**

v.

**CONCEPTS PLUS, INC. and Michael G. Lamelza, Appellants.**

Superior Court of Pennsylvania.

Argued Oct. 27, 1988.

Filed Dec. 29, 1988.

432

William J. Brennan, King of Prussia, for appellants.
William J. Bolla, Doylestown, for appellee.

Before CIRILLO, President Judge, and WIEAND and McEWEN, JJ.

CIRILLO, President Judge:

This is an appeal from an order of the Court of Common Pleas of Bucks County entering judgment in favor of the plaintiff and against the defendants in the amount of $64,-125.00. We affirm.

On December 28, 1982, appellee Earl Jamison executed an agreement of sale with appellant Concepts Plus, Inc. ("Concepts") for the purchase of a 1.1 acre tract of land in Solebury Township, Bucks County. The contract price was $67,500.00. Jamison paid the entire purchase price as a downpayment pursuant to the agreement of sale. Defendant Michael G. Lamelza guaranteed the obligation of Concepts to return the deposit money if Jamison was unable to secure the necessary permit from township authorities.

Pursuant to Paragraph (b) of the agreement of sale, Jamison was responsible for obtaining from the Solebury Township Board of Supervisors all necessary approvals and permits for the subdivision of the land. In addition, Paragraph (b) provided that defendant Concepts "will cooperate with Buyer in all ways reasonable for Buyer to obtain subdivision approval(s)." Paragraph 5(f) of the agreement provided that "In the event final settlement cannot be made by December 31, 1984 because of Buyer's inability to obtain final subdivision approval, as aforesaid, then all monies paid by Buyer to Seller shall be refunded to him with simple interest at the rate of ten (10%) percent per annum.*" The asterisk referenced at the end of Paragraph 5(f) provided that defendant Michael G. Lamelza, a principal of Concepts, personally guaranteed the return of monies to Jamison pursuant to the terms of Paragraph 5(f).

Prior to execution of the agreement, engineers of Concepts prepared the subdivision plan. Jamison made application to the Solebury Township Board of Supervisors for approval of the preliminary plan, and he hired John A. VanLuvanee, Esq., to represent his interests during the application process.

On September 20, 1983, the Solebury Township Board of Supervisors met and denied the subdivision application. Neither Jamison nor his attorney were at this meeting. The decision denying the plan was issued on September 29, 1983, and a copy was mailed to Jamison's counsel on October 5, 1983. Had Jamison wished to appeal this decision, the Pennsylvania Municipalities Planning Code would have

required that such an appeal be filed within thirty days of the decision.

In September and October of 1983, Jamison and his attorney became aware that Concepts was in default of the mortgage, and that the mortgagee, Gertrude Bouchayer, had either threatened to institute, or had instituted, foreclosure proceedings against Jamison. Jamison's counsel recommended against appealing the Board's decision. Thus, final subdivision approval was never obtained, and Jamison demanded of both Concepts and Mr. Lamelza the return of his deposit plus ten percent interest from December 28, 1982. The appellants denied this request.

Jamison filed suit to recover the downpayment pursuant to the terms of the agreement. The appellants contend that they are not liable for the return of the down money because Jamison failed to exercise "due diligence" in obtaining approval of the subdivision plan. The trial court found that there was no express requirement in the contract obligating Jamison to exercise due diligence, nor could that requirement be implied. The trial court relied upon the case of *Hanna v. Tremarco Corp.*, 31 D. & C. 2d 161 (1963), to support its finding.

Preliminarily, we note that appellate courts are not bound by decisions of the courts of common pleas. *City of Philadelphia v. Price*, 419 Pa. 564, 215 A.2d 661 (1966). In *Hanna*, the plaintiffs executed and delivered to defendant Tremarco Corporation an option to purchase land for use as an automotive service station at a price of $30,000.00. Gulf, acting as agent and attorney in fact for Tremarco, applied for a building permit from the building inspector. Four months passed and Tremarco was unable to secure a building permit. Tremarco advised the Hannas that it was extending the time for settlement pursuant to the terms in the option. Two months later, the building inspector denied the building permit, and the application was considered further by the Forest Hills Borough Council. The borough council also denied the permit. Thereafter, Tremarco, through Gulf, surrendered its rights under the option and

refused to go through with the purchase, and the borough council rezoned the property from "commercial" to "residential" classification. *Id.* at 162–163.

The Hannas filed suit against defendants Tremarco and Gulf, claiming that the option agreement required them to take legal action to attempt to compel the borough to issue a building permit. The plaintiffs claimed that, although there was no express provision to this effect, this obligation was imposed upon the defendants by implication from the terms of the contract. The agreement stated that:

should the TREMARCO CORPORATION fail to secure such licenses and permits as it may require for the use of said property in its business, then, at any time before the date of final settlement, it shall have the right to surrender its rights hereunder and receive back the consideration hereunder.

The court disagreed with the Hannas, and pointed out that any obligation on the part of Tremarco to use its best efforts or to exercise due diligence in obtaining a building permit was "significantly absent" from the agreement. *Id.* at 165.

In the instant case, the relevant clauses in the agreement of sale are as follows:

5. SPECIAL CLAUSES

\*    \*    \*    \*    \*    \*

(b) Buyer shall be responsible for obtaining all necessary approvals and permits for the subdivision of the subject premises from the balance of Seller's lands, Seller will cooperate with Buyer in all ways reasonable for Buyer to obtain subdivision approval(s).

\*    \*    \*    \*    \*    \*

(e) Final settlement shall be made within sixty (60) days after Buyer has obtained final subdivision approval from the Township of Solebury, but not later than 12/31/84.

(f) *In the event final settlement cannot be made by 12/31/84 because of Buyer's inability to obtain final subdivision approval, as aforesaid, then all monies*

*paid by Buyer to Seller on account of the purchase price shall be refunded to him* with simple interest at the rate of ten (10%) percent per annum.*

\* \* \* \* \* \*

\* The return of monies to Buyer pursuant to the terms hereof shall be guaranteed personally by Michael G. Lamelza, principal of Concepts Plus, Inc.

(emphasis supplied).

Appellants Concepts and Michael G. Lamelza claim that the language of the contract *implies* an obligation of "due diligence" upon Jamison in his attempt to obtain subdivision approval. They argue that because Jamison took no action in correcting the application or filing a new application, and because he did not go back before the Board "to challenge or even question the Board regarding any of the reasons given for its rejection of the application[,]" he violated this implied obligation of due diligence. Appellants analogize to case law imposing an obligation upon the buyer to exercise due diligence in the context of a mortgage contingency clause in a contract for the sale of real estate, and rely upon the case of *Newman v. Sablosky*, 268 Pa.Super. 85, 407 A.2d 448 (1979). In *Newman*, this court stated:

Agreements of sale subject to a condition precedent of obtaining adequate financing are valid and binding. Such an agreement, however, imposes a requirement of diligent and good faith effort on the part of the purchaser to secure the proper financing.

*Id.*, 268 Pa.Superior Ct. at 89, 407 A.2d at 451. *See generally* J. Calamari and J. Perillo, *The Law of Contracts* §§ 11–1—11–41 (2d ed. 1977).

Appellants also rely upon the case of *Stabile v. McCarthy*, 336 Mass. 399, 145 N.E.2d 821 (1957). In that case, as in the case at bar, the parties entered into a contract for the sale of real estate, and the plaintiff/buyer sought cancellation of the contract and the return of his deposit money. The agreement of sale contained the following provision:

This agreement is subject to the right of the buyer in the event that he shall have been unable to obtain the approval of the Wilmington Planning Board of his proposed

subdivision of the ... premises prior to the date ... set for performance ... at his option to cancel this agreement and claim the return of his deposit, in which event this agreement shall terminate without further obligation on the part of either party....

The plaintiff caused an engineer to prepare a subdivision plan. The plan, as introduced into evidence, still had "considerable engineering work ... to be done" on it before it could be presented for the board's approval. The plaintiff failed to go forward with his plan because percolation tests were so poor "that he didn't believe the plan could be accepted." The court stated:

> The parties quite clearly intended a binding contract to purchase not a mere option in the plaintiff to purchase without any obligation of affirmative action on his part. If the parties had intended no obligation on the plaintiff to take action they could have used a clause in the special provision importing no suggestion of obligation, inability or impossibility, or could have made the vendor's obligation to convey and the vendee's obligation to purchase "subject to" the granting of approval instead of making inability to obtain planning board approval a condition precedent to the exercise of the right to cancel.

*Id.* at 403, 145 N.E.2d at 823. The trial judge found that the plaintiff was entitled to recover the deposit, based upon the court's finding that the site was condemned by the sanitarian.

The Massachusetts appellate court disagreed, and concluded that the trial judge misapprehended the evidence when he based his conclusion that the plaintiff was excused from further effort (to obtain approval of a plan) upon some supposed ruling given to the plaintiff by the sanitarian. The court found that the sanitarian had had only one conversation with the plaintiff, and that the conversation had occurred prior to the percolation tests. The court stated that there was "no evidence ... to warrant a finding that the plaintiff made a reasonable effort to obtain ... approval," and that no ruling by the sanitarian gave the

plaintiff any excuse for inaction. *Id.* at 402, 145 N.E.2d at 823. The court found that although the special provision contained "no express requirement ... that the plaintiff use reasonable efforts to obtain approval, the absence of such an express requirement, even if found in other analogous provisions of the contract, is not significant here, where the circumstances make it plain that reasonable efforts must be made by the plaintiff before his right of cancellation arises." *Id.* at 403–04, 145 N.E.2d at 824. Thus, the *Stabile* court characterized "reasonable efforts" by the plaintiff/buyer in obtaining subdivision approval as a condition precedent to the plaintiff/buyer's right of cancellation, and found that a duty was implied and imposed upon the buyer to exercise reasonable efforts. Otherwise, as the court noted, the contract would be reduced to a mere option.[1]

■ In the instant case, the trial court stated:

We find that Mr. Jamison was under no efforts (sic) to exercise "due diligence" or to use his "best efforts" in obtaining the subdivision approval. . . . *The plaintiff was under no obligation to proceed with due diligence to obtain subdivision approval in the first place.* Since the plaintiff was under no such obligation initially, we cannot find that such an obligation arose once the subdivision approval had been denied.

(emphasis supplied). Although we agree with the result reached by the trial court, as will be discussed below, we cannot agree with the premise of the trial court's reasoning—that Jamison was never under any obligation to initiate subdivision approval proceedings. Further, we do not join in the trial court's apparent characterization of the agreement between the parties as a mere option, which is unilateral and imposes no obligation upon the optionee. In

1. The *Stabile* court concluded that a finding of reasonable efforts, whether express or implied in the contract, was a question for the trier of fact. Based upon the record, the court concluded there was insufficient evidence to warrant a finding that the plaintiff had made reasonable efforts to obtain subdivision approval. *Id.* at 402, 145 N.E.2d at 823.

our judgment, the instrument before us is an executory contract for the sale of land, imposing mutual obligations upon the parties.

The parties here intended a contract for the sale of real estate. The agreement was entered into with the understanding that both parties were firmly committed to the performance of the agreement provided that cooperation would be forthcoming from the borough council. The buyer has wisely protected himself, with the seller's consent, against the possibility that he is *unable* to obtain the license. In so doing, however, Jamison has impliedly promised to make a diligent and good faith effort to bring about the happening of the condition to his promise. Following the general principles of contract law, we observe that if no duty is implied or imposed upon the buyer in this situation, there is no contract. The buyer's promise or obligation is illusory. If in fact Jamison was under no obligation initially to proceed with approval proceedings, then the language of the contract is rendered meaningless. Jamison would have bound himself to nothing, and performance would be left to his whim—"I will if I want to." As one author has noted: "[T]he practice of making promises will lose much of its effectiveness in an economic order of co-operation and exchange if promises are to be performed only when it suits the promisor's convenience." Patterson, *Constructive Conditions in Contracts*, 42 Colum.L.Rev. 903, 953 (1942).

In a leading case in this context, Judge Cardozo stated:
It is true that [plaintiff] does not promise in so many words that he will use reasonable efforts.... We think, however, that such a promise is fairly to be implied. The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal.

*Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88, 91, 118 N.E. 214 (1917).

In the case before us, the contract specifically stated that the "Buyer shall be responsible for obtaining all necessary approvals and permits for the subdivision of the subject

premises...." Under these circumstances, as in the analogous situation of a mortgage contingency clause, we find no significance in the absence of words such as "due diligence," "reasonable efforts," or "best efforts." The statement that "Buyer shall be responsible for obtaining all necessary approvals and permits for the subdivision" cannot reasonably be interpreted, as the trial court states, to mean that Buyer was "under no obligation" to do anything. We must hold the promisor to the reasonable meaning of his or her words in order to protect the needs of society and trade as well as the promisee's justified reliance upon a promise. *See* 1 Williston, *Contracts* §§ 21, 35 (3d ed. 1957); *see also Slater v. Pearle Vision Center, Inc.* 376 Pa.Super. 580, 546 A.2d 676 (1988) (where it is clear that an obligation is within the contemplation of the parties at the time of contracting or is necessary to carry out their intentions, the court will imply the obligation even where the contract itself is not ambiguous); *Gallagher v. Upper Darby Township,* 114 Pa.Commw. 463, 471–72, 539 A.2d 463, 467 (1988) (same); *cf. Funke v. Paist et ux.,* 356 Pa. 594, 52 A.2d 655 (1947) (contract for sale of realty was contingent upon obtaining approval of zoning board for use of dwelling house as dental office; purchaser sent letter giving full disclosure of his intended use, and board replied stating that no formal approval was required; held: contingency clause was sufficiently complied with and purchaser was entitled to specific performance); *Burke v. General Outdoor Advertising Co.,* 110 Pa.Super. 343, 168 A. 334 (1933) (in a lease agreement dispute, the court held that the question of whether lessee applied for permit in good faith was a question of fact).

In *Di Benedetto v. Di Rocco,* 372 Pa. 302, 93 A.2d 474 (1953), the parties entered into a contract for the sale of real estate. The agreement of sale provided: "In the event the buyer cannot make the settlement, he may cancel this agreement." *Id.,* 372 Pa. at 303, 93 A.2d at 474. The Pennsylvania Supreme Court reasoned that the word "cannot" meant objective inability, rather than subjective unwillingness. *Id.,* 372 Pa. at 304, 93 A.2d at 475. Likewise, we

find the word "inability" in the agreement of sale before us to mean objective inability, rather than subjective unwillingness or an absence of any obligation whatsoever.

■ As we stated above, despite our disagreement with the trial court's reasoning, we believe the trial court has reached the correct result. In its Memorandum and Order Disposing of Post Trial Motions, the trial court stated that:

[E]ven were one to apply a standard of due diligence or good faith, or reasonable conduct, we do not believe that a purchase of real estate which requires subdivision approval further requires a buyer to appeal from an adverse decision of the Township authorities.

We agree. Appeal of an adverse decision extends well beyond sufficient compliance with the contingency clause, or a good faith effort to obtain a permit, license, or subdivision approval from township or municipal authorities. Here, the trial court made the following findings of fact with respect to Jamison's efforts to obtain subdivision approval: pursuant to the agreement of sale, Jamison caused appearances to be entered before the township planning commission and the township board of supervisors; Jamison made application for approval of a preliminary plan of subdivision; Jamison hired an attorney to represent his interests before the township and the various boards and agencies in connection with the subdivision application. These facts are fully supported by the record, and therefore we see no need to remand for a determination of whether Jamison made a reasonable effort to obtain subdivision approval pursuant to the agreement of sale. Jamison's efforts, although not successful, were sufficient to establish due diligence.

Appellants also claim that it was prejudicial error for the trial court to refuse to allow their expert witness to testify at trial. Appellants have not included this issue in their motion for post-trial relief. We therefore find appellants have waived appellate review of this issue. Pa.R.A.P. 227.1

ORDER AFFIRMED.