

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-8-2001

# Huang v. BP Amoco Corp

Precedential or Non-Precedential:

Docket 00-3607

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Huang v. BP Amoco Corp" (2001). *2001 Decisions*. Paper 261.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/261

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 8, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-3607

JOSPEH HUANG; JULIA Y. HUANG,

v.

BP AMOCO CORPORATION

Joseph Huang; Julia Huang,
       Appellants

On Appeal From the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 00-CV-01290)
District Judge: Honorable Clarence C. Newcomer

Argued: August 2, 2001

Before: MCKEE, AMBRO, and GREENBERG,
Circuit Judges

(Filed: November 8, 2001)

       Kenneth J. Fleisher (Argued)
       E. Harris Baum
       Zarwin, Baum, DeVito, Kaplan,
       O'Donnell & Schaer
       1515 Market Street, Suite 1200
       Philadelphia, PA 19102

       Attorneys for Appellants

William A. DeStefano (Argued)
Jeffrey M. Viola
Maura F. Ratigan
Saul Ewing LLP
1500 Market Street
Centre Square West, 38th Floor
Philadelphia, PA 19102

Attorneys for Appellee

OPINION OF THE COURT

AMBRO, Circuit Judge:

In this diversity action alleging breach of a commercial property lease under Pennsylvania law, appellants Joseph and Julia Y. Huang (collectively, the "Huangs" or "Lessor") appeal an order by the United States District Court for the Eastern District of Pennsylvania ("the District Court") granting summary judgment in favor of appellee BP Amoco Corporation ("BP Amoco"), the successor in interest of Amoco Oil Company ("Amoco" or "Lessee"). We conclude that by making the unsupported factual assumption that Amoco could not apply for contractually required Government approvals until it procured satisfactory agreements with third-party co-developers, the District Court unjustifiably allowed BP Amoco to flout its implied covenant of good faith and fair dealing.

I. Factual and Procedural History

On September 21, 1998, Amoco by written agreement ("the Lease") leased a commercial property in Philadelphia from the Huangs for fifteen years. The Lease allowed Amoco to make improvements to the property for the purpose of operating a "retail gasoline facility" or "for any [other] lawful purpose." Under section 2 of the Lease, no rent was due until Amoco sold gasoline from the property.

The crucial provisions for our purposes are in subsections 7(b) and 7(c), and S 19, of the Lease. Subsection 7(b) gave Amoco 180 days to obtain "approvals"

2

from various government authorities for any improvements to the property, subject to thirty-day extensions at the Huangs' option:

> Lessee shall apply for appropriate zoning and for issuance from the proper municipal, county, state and other duly constituted authorities such unconditional Approvals and permits . . . (collectively "the Approvals") satisfactory to Lessee, in its sole discretion, for the razing of improvements, construction of improvements and installation of equipment for a retail gasoline facility and for the operation and maintenance of such facility. . . . Lessee shall not be deemed to be in default of any provision relating to the Approvals as long as the pursuit of the administrative, legal or equitable proceedings shall be diligently carried out by Lessee. . . .

> It is agreed by Lessee that it shall obtain the Approvals, or denial, within 180 days of the full execution of the Lease. In the event the Approvals, or denial, are not received by Lessee within the 180 days, Lessor shall have the option, at his sole discretion, of extending the period for an additional thirty (30) days, and granting additional thirty (30) day periods thereafter until the Approvals or denial are received, or canceling this Lease.

Section 19 reiterated that Amoco was required to obtain the Approvals: "In reliance on Lessor's representations, warranties and covenants set forth herein, Lessee will obligate itself to expend sums to, without limitation, . . . obtain the Approvals."

Subsection 7(c)1 listed situations in which Amoco could
_____

1. Subsection 7(c) reads in full:

> In the event Lessee shall be unable to obtain the Approvals, or any thereof; or in the event the Approvals, or any thereof, if obtained,
> shall be afterward revoked without fault of Lessee, or its assignee or
> sublessee; or in the event Lessee shall be unable to enter into an agreement satisfactory to Lessee, in its sole discretion, for the co-
> development with a third party quick-service restaurant and satisfying all conditions and contingencies in that agreement; or in

3

terminate the Lease without incurring liability. Three of these situations are relevant here. First, it could terminate the Lease if one of the required Approvals were denied. Second, Amoco could terminate the Lease if it were"unable to enter into an agreement satisfactory to Lessee, in its sole discretion, for the co-development with a third party quick-service restaurant. . . ." Third, "[i]f for any reason [Amoco] has not obtained the Approvals within six (6) months after the date of execution of this Lease by both Lessor and Lessee, then Lessee may, at Lessee's discretion, terminate this Lease as though the Approvals, of any thereof, had been denied."

Six months after signing the Lease, BP Amoco had made no efforts to obtain the required Approvals. On March 19, 1999, BP Amoco and the Huangs agreed to extend the 180-day period for obtaining Approvals to April 20, 1999. On April 19, 1999, still having made no effort to obtain any Approvals, BP Amoco sent a letter to the Huangs stating that it "has not obtained the Approvals required by Section 7 . . . within the prescribed 180-day period as extended to April 20, 1999," and "[a]ccordingly, pursuant to Section 7(c) . . . hereby exercises its privilege of terminating[the Lease]." On neither March 19 nor April 19 did BP Amoco claim that its ability to seek the Approvals was contingent upon its procuring satisfactory third-party co-developer agreements.

_____

the event necessary utility connections (including but not limited to
electricity, natural gas, sanitary and storm sewer, telephone and water hookups) adequate in Lessee's sole judgment are unavailable at the property line or in the adjoining right-of-way to serve the Demised Premises for a standard "tap-on" fee; or if Lessee, its assignee or sublessee shall be restrained or enjoined from conducting its business and maintaining its improvements, driveways and equipment; then and in any or either of such events, Lessee shall have the privilege of terminating this Lease by giving Lessor ten (10) days' notice of its intention so to do, and shall thereupon be relieved of all liability hereunder. If for any reason Lessee has not obtained the Approvals within six (6) months after the date of execution of this Lease by both Lessor and Lessee, then Lessee may, at Lessee's discretion, terminate this Lease as though the Approvals, or any thereof, had been denied.

Indeed, on neither occasion did BP Amoco even mention its inability to reach such agreements.

After BP Amoco announced that it was terminating the Lease despite occupying the property rent-free for seven months, the Huangs brought suit in the District Court and filed a motion for summary judgment. BP Amoco responded with a cross-motion for summary judgment, and the District Court entered summary judgment for it. The District Court found that subsection 7(c), "in clear and unambiguous terms, allowed [BP Amoco] to terminate the contract" in two situations: "if [BP Amoco] failed to reach any agreements, suitable to [BP Amoco] in its sole discretion, with third parties regarding the development of the property" or "if, for any reason, [BP Amoco] failed to obtain [the required] Approvals within six months of executing the contract." Huang v. BP Amoco Corp., No. 00-1290, slip op. at 1, 7 (E.D. Pa. July 13, 2000).

The District Court recognized that despite subsection 7(c)'s "clear and unambiguous terms," BP Amoco was--like any party to a contract--"bound by an implied covenant of good faith and fair dealing." Id. at 8. But reasoning that "common sense dictates that [BP Amoco] would not have been required to apply for zoning permits, variances, or other Approvals until [it] had determined with specificity how it would develop and operate the property," the District Court found that "any obligation on [BP Amoco] to pursue Approvals was contingent upon [its] success on procuring satisfactory agreements [with] third-party co-developers." Id. at 12 (emphasis added).

In other words, the District Court found, based on its "common sense" assumption, that BP Amoco's duty to act in good faith did not include a responsibility to seek and obtain the Approvals until it first reached acceptable agreements with third-party co-developers. Because BP Amoco "made earnest [though unsuccessful] efforts to negotiate and reach suitable agreements with third parties," it satisfied its covenant to act in good faith. Id. at 9. Therefore, the District Court concluded, BP Amoco could--as its April 19, 1999, letter did--terminate the Lease without ever trying to obtain the Approvals. Id.

5

Following the District Court's grant of summary judgment to BP Amoco, the Huangs filed a motion for reconsideration. The District Court denied the Huangs' motion, again insisting that BP Amoco could not seek Approvals without first reaching agreements with third-party co-developers, Huang v. BP Amoco Corp., No. 00-1290, slip op. at 1, 4 (E.D. Pa. October 12, 2000), and this appeal followed. We have jurisdiction under 28 U.S.C. S 1291.

II. Legal Analysis

We review the District Court's grant of summary judgment de novo. Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994). Rule 56 of the Federal Rules of Civil Procedure provides that a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, though the non-moving party must make a showing sufficient to establish the existence of each element of his case on which he will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The standard for granting summary judgment under Rule 56 "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Pennsylvania contract law informs our analysis of the District Court's entry of summary judgment. In Pennsylvania, a lease is a contract and "is to be interpreted according to contract principles." Hutchinson v. Sunbeam Coal Corp., 519 A.2d 385, 389 (Pa. 1986). One of the most important principles of contract law is the implied covenant of good faith. "[S]uch a promise is fairly to be implied. The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was

6

fatal." Jamison v. Concepts Plus, Inc., 552 A.2d 265, 269
(Pa. Super. Ct. 1988) (quoting Wood v. Lucy, Lady Duff-
Gordon, 118 N.E. 214, 214 (N.Y. 1917) (Cardozo, J.)). Hence
"where it is clear that an obligation is within the
contemplation of the parties at the time of contracting or is
necessary to carry out their intentions, the court will imply
it . . . even where the contract itself is not ambiguous."
Slater v. Pearle Vision Center, Inc., 546 A.2d 676, 679 (Pa.
Super. Ct. 1988).

Because of the implied covenant of good faith, an
approvals contingency clause does not give a lessee an
absolute right to terminate the lease without penalty.
Rather, the lessee must make a diligent and good-faith
effort to obtain the required approvals. Jamison , 552 A.2d
at 269.2 Under Pennsylvania law, whether a party has made
a good-faith effort is a question of fact. Id.  at 270 (citing
Burke v. Gen. Outdoor Adver. Co., 168 A. 334, 336 (Pa.
Super. Ct. 1933)); Pressey v. McCornack, 84 A. 427, 428
(Pa. 1912); In re J.B. Van Sciver Co., 73 B.R. 838, 845
(Bankr. E.D. Pa. 1987) (applying Pennsylvania law).

In light of these principles, the District Court made an
unsupported factual assumption that colored its analysis. It
assumed that BP Amoco could not seek the Approvals until
it reached suitable agreements with third-party co-
developers. Without this factual assumption BP Amoco
would not have carried its initial burden of "show[ing] that
there is no genuine issue as to any material fact." Fed. R.
Civ. P. 56(c). The Huangs alleged in their complaint that BP
Amoco "made no effort whatsoever to obtain the Approvals,
in violation of its obligations under Section 7(b) of the
Lease." The pleadings and documents in the record offer
some support for the Huangs' allegation: BP Amoco failed to
make any effort to seek the Approvals, and failed to
state--on March 19, 1999, April 19, 1999, or at any other
time preceding the current litigation--that it failed to do so
because it could not reach suitable agreements with third-
party co-developers. Only when faced with legal action did
_____

2. Indeed, "if no duty is implied or imposed upon the [lessee] in this
situation, there is no contract" because the absence of an implied
obligation would render the lessee's promise illusory. Id.

7

BP Amoco insist that its bad luck with co-developers was responsible for its purported inability to seek the Approvals.

The District Court cited nothing in the record that even tended to disprove the Huangs' allegation, let alone anything so persuasive that no rational juror could find that BP Amoco's failure to seek the Approvals violated its implicit covenant to act in good faith. While BP Amoco presented the statement of its employee that BP Amoco made earnest efforts to find suitable third-party co-developers, that statement sheds little if any light on whether BP Amoco acted in good faith with respect to seeking the Approvals.

Rather than acknowledging the Huangs' allegation on the factual question of BP Amoco's good faith with respect to the Approvals, the District Court ignored this issue by making an assumption on another, underlying question of fact: it assumed that getting a suitable co-developer was the horse before the cart of taking even the first step in obtaining the Approvals. The District Court made this assumption of fact based only on its own notion of "common sense" rather than anything in the record.

Relying on this assumption enabled the District Court to avoid the factual question that lies at the heart of this case: whether BP Amoco's failure to seek the Approvals violated its covenant of good faith and fair dealing. By assuming that co-developer agreements must precede any effort to obtain the Approvals, the District Court effectively rewrote the Lease to contain a condition precedent to BP Amoco's obligation regarding those Approvals. In so doing, the Court gutted BP Amoco's good-faith obligation to seek Approvals and, by entering summary judgment in its favor, ran afoul of Rule 56(c).

* * * * *

Because the District Court substituted its version of "common sense" for that of a jury and thereby decided a disputed issue of material fact (from which followed its conclusion of law), we reverse its entry of summary

8

judgment and remand for further proceedings consistent with this opinion.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

9