**AMERICAN TOWER, L.P., f/k/a American Tower Systems, L.P., Plaintiff–Appellant,**

v.

**LOCAL TV IOWA, L.L.C., Defendant–Appellee.**

No. 11–0276.

Court of Appeals of Iowa.

Nov. 9, 2011.

Eric G. Hoch and R. Todd Gaffney of Finley, Alt, Smith, Scharnberg, Craig, Hilmes & Gaffney, P.C., Des Moines, and David M. Rownd and Scott P. Clair of Thompson Coburn, L.L.P., Chicago, Illinois, for appellant.

Michael A. Giudicessi of Faegre & Benson, L.L.P., Des Moines, John C. Greiner of Graydon, Head & Ritchey, L.L.P., Cincinnati, Ohio, for appellee.

Heard by VAITHESWARAN, P.J., and POTTERFIELD and DOYLE, JJ.

VAITHESWARAN, P.J.

In this dispute between a lessor and lessee of a broadcasting tower, we must decide whether the district court erred in rejecting breach-of-contract and equitable estoppel claims.

## I. Background Facts and Proceedings

American Tower, L.P., the developer of a television broadcasting tower in Slater, Iowa, agreed to lease space on the tower to WHO–TV for a period of fifteen years. WHO–TV was later sold, and the lease agreement was assigned to Local TV.

Local TV decided not to broadcast its digital signal from the Slater tower, as it had an ownership interest in another tower that was cheaper to use. Having made that decision, Local TV did not seek or obtain the Federal Communications Commission permits that would have been needed to broadcast from the Slater tower. Local TV also stopped making rent payments to American Tower.

American Tower sued Local TV, asserting claims of breach of contract and equitable estoppel. The company sought the "total amount due from the date of [Local TV's] last rent payment through the end of the Lease term," which it alleged was $982,687.03. Local TV countered with a

motion for summary judgment on the ground that the lease agreement allowed it to take the action it did. The district court agreed with Local TV, concluding "the unambiguous language" of the lease agreement afforded Local TV "the right to cause termination of the lease by failing to seek a permit to continue its broadcasting activity from the Slater tower." The court stated, "The consequence for [Local TV's] choice not to continue to use the Slater tower is its forfeiture of any amount of prepaid rent," rather than the amount due on the balance of the fifteen-year lease. The court also summarily rejected American Tower's equitable estoppel claim.

American Tower appealed.

## II. Breach-of-Contract Claim

American Tower contends the district court incorrectly interpreted the lease agreement. The pertinent provision of the agreement is paragraph 7.01, which states:

Lessee shall obtain, at its own expense, *any and all necessary licenses or permits (including building permits)* from such governmental authorities as shall have jurisdiction in connection with the construction, installation, repair, alteration or replacement of Lessee's Property or with any of its activities thereon or contemplated by this Lease, shall furnish Lessor with copies of same, and shall abide by the terms and provisions of such licenses and permits. *If, for any reason, any governmental authority should fail to issue, extend or renew a license or permit to Lessee to begin or continue use of the Tower for television broadcasting purposes, or should prohibit the use of the Tower for such purposes so that the purpose of this Lease is substantially frustrated, then and in that event this Lease shall terminate. This Lease shall terminate in its entirety if Lessee's television broadcasting operations are unable to use the Tower due to failure to acquire, or loss of, such license or permit.* In the event of termination of this Lease in its entirety due to such failure to acquire, or loss of, such license or permit, then Lessee shall be relieved of any further obligations to make rental payments for any period after the date of termination of this Lease and (subject to offset or withholding by Lessor to cover any unpaid additional rent or other authorized charges which may be owed through the date of termination[)] Lessee shall be entitled to a refund of any advance rentals which it has paid out in proportion to the period of the Lease through such date of termination, based on the number of months elapsed under the Lease, and assuming the total rental payments due hereunder were to be made in equal installments over a twelve (12) month period. *In the event that Lessee's failure to acquire, or loss of, its license or permit is due to any fault or act (or failure to act) on the part of Lessee, then Lessee shall be entitled to no refund of rental payments previously made, but shall be relieved of any further obligations to make Lease payments or to perform any of its other rental obligations for any period after the date of such termination (provided, however, that it nevertheless shall pay any unpaid additional rent or other authorized charges which may be owed through the date of termination).*

(Emphasis added.)

American Tower contends Local TV did not comply with the first sentence of this paragraph, which requires the lessee to "obtain ... any and all necessary licenses or permits." Local TV responds that the middle emphasized sentence of the paragraph authorizes the termination of the lease if "for any reason" a government authority fails to issue a permit. Local TV also points to the last sentence of the paragraph which relieves the company of

any future obligations under the lease agreement even if the failure to acquire the license or permit is Local TV's fault.

We agree with both sides that paragraph 7.01 contains the key language for disposition of the appeal. Interpretation of this provision does not depend on extrinsic evidence. *See Pillsbury Co., Inc. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 435 (Iowa 2008). Accordingly, interpretation is a legal issue and we must simply decide whether the district court erred as a matter of law in adopting Local TV's interpretation over American Tower's. *Id.; Virden v. Betts & Beer Constr. Co.*, 656 N.W.2d 805, 806 (Iowa 2003) (quoting Iowa Rule of Civil Procedure 1.981 for the proposition that we must determine whether the record establishes "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law").

■ We begin with the first sentence, which, as noted, requires Local TV to obtain "any and all necessary licenses or permits." Local TV reads into the term "necessary" an obligation to obtain permits only if it chooses to broadcast from the Slater tower. The company also appears to suggest that it satisfied its obligation under this sentence by obtaining "necessary" permits for the alternate tower from which it chose to broadcast. Local TV's arguments do not hold water. By its terms, the lease agreement is a contract to rent space on the Slater tower. The term "necessary," therefore, clearly refers to permits to facilitate the rental of space on that tower. It is undisputed that Local TV did not seek or obtain these permits. Therefore, Local TV did not comply with the first sentence of paragraph 7.01.

■ We turn to the middle emphasized sentence, the provision that Local TV argues allows it to terminate the lease if "for any reason" the necessary permits are not obtained. Local TV's argument ignores

the clause immediately following the "for any reason" language. That clause says nothing about inaction by the lessee. Instead, the focus is on the "governmental authority['s]" failure to issue the permit. The clause allows the lessee to terminate the lease agreement only if the governmental authority's, rather than the lessee's, action or inaction frustrates the purpose of the lease. The clause presupposes that the lessee actually applied for a permit. As Local TV did not, this language is of no assistance to the company.

■ We arrive at the final sentence of the paragraph, which sets forth the remedy should Local TV fail to acquire a permit. To reiterate, it states:

> In the event that Lessee's failure to acquire, or loss of, its license or permit is due to any fault or act (or failure to act) on the part of Lessee, then Lessee shall be entitled to no refund of rental payments previously made, but shall be relieved of any further obligations to make Lease payments or to perform any of its other rental obligations for any period after the date of such termination (provided, however, that it nevertheless shall pay any unpaid additional rent or other authorized charges which may be owed through the date of termination).

This language is dispositive. As Local TV asserts, the sentence clearly and unambiguously "demonstrates a meeting of the minds regarding the consequences for the Lessee intentionally failing to retain or renew its license." Even though Local TV had an obligation to obtain permits to broadcast from the Slater tower, and even though it did not comply with that obligation, the lease agreement limited American Tower's remedy for this breach to the retention of already-paid rent. The limitation language, drafted by American Tower, absolved Local TV of its obligation to make future rent payments, whether the failure to acquire the permits was inadver-

tent or "due to any fault or act (or failure to act)" on the part of Local TV.[1] By virtue of this language, American Tower bargained away its right to obtain future lease payments from Local TV.

Apparently recognizing the hurdle posed by this language, American Tower alternately asserts that Local TV's obligation to obtain all necessary permits includes an implied duty of good faith and fair dealing, which, in its view, was violated. Local TV counters that the last sentence of paragraph 7.01 took "the issue of good faith off the table."

In Iowa, "[i]t is generally recognized that there is an implied covenant of good faith and fair dealing in a contract." *Harvey v. Care Initiatives, Inc.*, 634 N.W.2d 681, 684 n. 4 (Iowa 2001) (citing Restatement (Second) of Contracts § 205, at 99 (1981)); *accord Midwest Mgmt. Corp. v. Stephens*, 291 N.W.2d 896, 913 (Iowa 1980) (stating that a contract affording one of the parties "sole discretion" to terminate the contract required party "to exercise that discretion in a reasonable manner on the basis of fair dealing and good faith"). "The underlying principle is that there is an implied covenant that neither party will do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." 13 Richard A. Lord, *Williston on Contracts* § 38.15, at 437 (4th ed.2000) [hereinafter *Williston on Contracts*]. This implied covenant generally operates upon an express condition of a contract, the occurrence of which is largely or exclusively within the control of one of the parties. *Williston on Contracts* § 38.15, at 435.

As noted, the first sentence of paragraph 7.01 expressly obligated Local TV to obtain the necessary permits to broadcast from the Slater tower.[2] In our view, this express provision also impliedly required Local TV to act in good faith. But this conclusion does not assist American Tower, because, once again, we run squarely into the last sentence of paragraph 7.01. Specifically, American Tower bargained away its remedy for any breach of an implied duty of good faith. As one treatise on contracts provides,

Implied contractual duty of good faith and fair dealing in commercial contracts does not support an independent cause of action for failure to act in good faith under a contract; instead, the duty of good faith is meant to give the parties what they would have stipulated for at the time of contracting if they could have foreseen all future problems of performance.

---

1. American Tower argues that the term "fault" should be read to mean "negligent acts or omissions, not an intentional failure to comply with the terms of the lease." We see no basis for narrowing the language in this fashion. The concept of fault is not limited to negligence. *See* 65A C.J.S. *Negligence* § 362, at 151 (2010) ("The applicable [comparative negligence] statutes in some states call for the comparison of fault, not just negligence, which fault may encompass intentional conduct or intentional torts."); *cf.* Iowa Code § 668.1(1) (2009) (defining "fault" in the context of chapter 668 as constituting any measure of negligence or recklessness; not including in its definition for the purposes of chapter 668 intentional acts). And the lease agreement's use of "any fault" makes clear that the reason for Local TV's failure to acquire the permits does not change the remedy.

2. Local TV cites a federal Eighth Circuit Court of Appeals decision for the proposition that "the covenant does not 'give rise to new substantive terms that do not otherwise exist in the contract.'" *Mid–America Real Estate Co. v. Iowa Realty Co.*, 406 F.3d 969, 974 (8th Cir.2005) (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 700 (8th Cir.2003)). This case is inapplicable in light of our conclusion that the substantive requirement to obtain permits is expressly contained within the lease agreement.

13 Richard A. Lord, *Williston on Contracts* § 38.15, at 24 (4th ed. Supp.2011); *see also Midwest Mgmt. Corp. v. Stephens,* 291 N.W.2d 896, 913 (Iowa 1980) ("An agreement will not be given an interpretation which places one party at the mercy of another *unless the contract clearly requires that result.*" (emphasis added)). American Tower stipulated to foregoing future rent payments even if Local TV was at fault for failing to obtain the necessary permits. While we disagree with Local TV's broad statement that the last sentence of paragraph 7.01 as a general matter took good faith "off the table," we agree the sentence at least removed from the table American Tower's remedy for breach of the express duty to obtain permits for the Slater tower and for breach of the resulting implied duty to act in good faith in obtaining those permits. *See Yarborough v. DeVilbiss Air Power, Inc.,* 321 F.3d 728, 733 (8th Cir.2003) ("[W]e believe that in no situation can the implied covenant of good faith and fair dealing limit the way in which a party exercises its discretion when the aggrieved party has specifically disavowed any limitations on that discretion, and the exercise of that discretion (and its consequences) are easily foreseeable."); *VTR, Inc. v. Goodyear Tire & Rubber Co.,* 303 F.Supp. 773, 777 (S.D.N.Y. 1969) ("[T]he parties may, by express provisions of the contract, grant the right to engage in the very acts and conduct which would otherwise have been forbidden by an implied covenant of good faith and fair dealing.").

Our conclusion is not inconsistent with opinions cited by American Tower recognizing an implied duty of good faith. *See Huang v. BP Amoco Corp.,* 271 F.3d 560, 564 (3d Cir.2001); *Dasenbrock v. Interstate Rest. Corp.,* 7 Ill.App.3d 295, 287 N.E.2d 151, 154 (1972).

In *Huang,* the court found that a lease provision leaving it to the lessee to obtain certain approvals, contained an implied covenant of good faith and did not "give a lessee an absolute right to terminate the lease without penalty." 271 F.3d at 565. The court found a fact question on whether the good faith covenant was violated. *Id.* We need not resolve such a fact question here because the lease agreement, as a matter of law, removes the remedy for a breach of the implied duty of good faith, even if such a breach were found by the fact-finder.

In *Dasenbrock,* a lease required the lessee "to secure from the proper authorities ... the necessary licenses, consents and permits" to operate its business on the leased property. 287 N.E.2d at 154. The lease provided that if the permits and licenses were not obtained within a three-month period, the lessee had the right "at its option to terminate [the] lease." *Id.* The lessee never applied for the necessary licenses and permits and the court held that this inaction violated the duty of good faith. *See id.* at 152, 155. The court wrote,

Reading the contract as a whole, it appears that the beginning of paragraph (4) limits the condition that no rents would accrue until the permits were obtained. This section of the lease implies a promise on the part of the lessee to perform in good faith an obligation to use reasonable efforts to obtain the necessary licenses within a reasonable time. Since the lessee failed to act in good faith and make any effort to secure the licenses, his obligation to pay rent did arise.

*Id.* at 155. Unlike this case, there is no indication that the lease agreement in *Dasenbrock* expressly removed the remedy of future lease payments in the event the lessee breached the duty of good faith.

American Tower's remaining arguments have either been addressed in the context

**552**

of our previous discussion or, in our view, would not alter our conclusions. The same is true of Local TV's responsive arguments. We proceed to American Tower's equitable estoppel claim.

### III. Equitable Estoppel

■ American Tower asserts that the district court improperly dismissed its equitable estoppel claim on summary judgment. The company contends it entered into the lease believing that WHO–TV intended to broadcast from the Slater tower and was unaware of "WHO–TV's true intentions." In its view, those true intentions were concealed, foreclosing Local TV from subsequently terminating the lease.

■ The Iowa Supreme Court has recognized the doctrine of equitable estoppel in contract law. *Margeson v. Artis,* 776 N.W.2d 652, 659 (Iowa 2009). Under the doctrine, the parties to a contract may " 'estop themselves from asserting any right' under the contract 'by conduct inconsistent with the continued existence of the original contract.' " *Id.* (quoting *Recker v. Gustafson,* 279 N.W.2d 744, 755 (Iowa 1979)). This doctrine has been character-

ized as an affirmative defense to a contract action. *Moser v. Thorp Sales Corp.,* 256 N.W.2d 900, 908 (Iowa 1977).

American Tower seeks to use the doctrine as a sword to hold Local TV responsible for future rent payments under the lease. The problem American Tower faces is its inability to show excusable ignorance of the true facts. *See id.; see also Merrifield v. Troutner,* 269 N.W.2d 136, 137 (Iowa 1978) (requiring proof of reliance to the prejudice of the party). Local TV was obligated to apply for the necessary permits to broadcast from the Slater tower. While it did not, this contingency was contemplated and addressed in the last sentence of paragraph 7.01 of the lease agreement. As American Tower drafted a remedy for precisely what happened, its equitable estoppel claim based on a fraudulent concealment of facts is not viable as a matter of law.

We affirm the grant of summary judgment for Local TV.

**AFFIRMED.**