# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00443-CV

**Lois Bush and Randy Busch, Appellants**

**v.**

**Johnson-Sewell Ford Lincoln Mercury, Appellee**

## FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
## NO. 32,428, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants, spouses Lois Bush and Randy Busch (the "Bushes"[1]), appeal a final summary judgment that they take nothing on claims against Johnson-Sewell Ford Lincoln Mercury and awarding Johnson-Sewell attorney's fees on a counterclaim for breach of a settlement agreement. We will affirm.

## BACKGROUND

On April 23, 2005, the Bushes purchased a two-wheel drive 2005 Lincoln Aviator sport utility vehicle from Johnson-Sewell in exchange for a trade-in vehicle and a note. The Bushes allege that Johnson-Sewell sales staff induced them into purchasing the Aviator by misrepresenting that it had all-wheel drive (AWD) rather than two-wheel drive. The Bushes also claim that Johnson-

---

[1] Although appellants' surnames are spelled differently, their counsel identifies them collectively as the "Bushes." We will do the same.

Sewell engaged in a bait-and-switch scheme, misrepresenting that it had in stock vehicles having AWD and other features they inquired about when, in fact, the dealership had no such vehicles on its lot. Johnson-Sewell disputes these allegations. It suggests that, at most, the Bushes may have misunderstood the nature of a "Positrac" function on the Aviator they purchased and whether vehicles the dealership indicated were "available" meant they were physically on its lot versus being available in the wholesale market.

Approximately two weeks after purchase, the Bushes allege they learned, to their "shock and consternation," that their Aviator did not have AWD. Thereafter, the parties negotiated at least five potential options for resolving the Bushes' complaint. One option they discussed was a transaction in which the Bushes would have traded in the Aviator for an Aviator having AWD and other features the Bushes desired that had been located at a Houston dealership. In this context, on May 26, 2005, the Bushes' counsel sent a DTPA[2] demand letter to Johnson-Sewell on their behalf. Among other complaints, the Bushes asserted that Johnson-Sewell "ha[d] refused to give the Bushes what they paid for," "ha[d] refused to rescind the deal and return their trade-in vehicle," and that "[t]hey even offered to accept a non-conforming vehicle, but you insisted that they pay you an additional $5,800 for the privilege of driving off in a vehicle that is not what they wanted and not what they paid for!" The Bushes further stated:

> The Bushes want what they paid for. However, as one last attempt at reconciliation, the Bushes would *consider* [emphasis in original] taking the available vehicle if it is modified to include a premium sound system, heated and cooled seats, and adequate

---

[2] Deceptive Trade Practices and Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. § 17.41 *et. seq.* (West 2002 & Supp. 2008).

2

pin striping, subject to their right to inspect and ensure the vehicle is to their satisfaction, and if you pay their attorney's fees ($500 at this point).

If you cannot provide a vehicle acceptable to the Bushes, they demand that you rescind the sales transaction, return their trade-in vehicle (with a depreciation or rental payment if it has been damaged or driven a significant number of miles), return any cash they paid, pay or cancel their purchase note, reimburse them for any payments made on the note (both principal and interest), and pay their attorney's fees.

In a letter dated June 14, 2005, Johnson-Sewell's managing partner, Robert H. Sewell, wrote back to the Bushes' counsel on the dealership's behalf:

Marilyn Schaefer with our office called and spoke with you on June 7, 2005 as to our offer to settle the notice of intent to file suit against us you communicated on behalf of Randy and Lois Bush.

Per her conversation with you we agreed to meet the terms spelled out on Page 4, Paragraph 4 of the above-referenced letter by:
- Rescinding the transaction
- Paying the $500.00 attorney fee
- Making their payments to Ford Credit while we had the vehicle (2 payments)
- The vehicle has not been driven a significant number of miles so there would be no rental due
- The vehicle has not depreciated in that we spent our monies on the vehicle to make it ready for sale. In fact the vehicle is in better shape than when we received it. (This vehicle has not depreciated any more than the Aviator you have in your possession)

"Page 4, Paragraph 4," as referenced by Mr. Sewell, corresponds to the location of the second of the two above-quoted paragraphs from the Bushes' DTPA demand letter—the portion referring to rescission. Sewell continued that "[y]ou indicated to Mrs. Schaefer you would speak to Mr. and Mrs. Bush and get back with her," but that Johnson-Sewell had not heard from him even after leaving several messages. Sewell concluded, "We are ready, willing and able to meet the terms of their offer to settle and we are waiting to finalize the transaction."

3

The Bushes did not consummate this transaction. Instead, approximately three months after purchasing the Aviator from Johnson-Sewell, the Bushes traveled to Houston themselves and traded in the vehicle for the Aviator that had been located there. Subsequently, in January 2006, the Bushes filed suit against Johnson-Sewell. They alleged causes of action for DTPA violations, common-law fraud, negligent misrepresentation, and breach of express or implied warranty.

Johnson-Sewell answered with a general denial. Also, relying on the parties' prior correspondence quoted above, the dealership pled that the parties had formed a valid, enforceable agreement to settle the Bushes' claims in exchange for Johnson-Sewell's rescinding the sale transaction and performing the other terms in "Page 4, Paragraph 4"of the Bushes' DTPA demand letter. On this basis, Johnson-Sewell asserted the affirmative defense of estoppel by contract and a counterclaim for breach of contract.

On March 28, 2007, the Bushes filed a traditional motion for partial summary judgment "with respect to liability" on each of its causes of action against Johnson-Sewell.[3] On April 16, Johnson-Sewell filed a response to the Bushes' motion and objections to their summary-judgment evidence. On April 18, Johnson-Sewell filed a traditional motion for final summary judgment on its affirmative defense of estoppel by contract and its breach-of-contract counterclaim. Johnson-Sewell sought judgment that the Bushes take nothing on each of their claims, as well as breach-of-contract damages in the form of attorney's fees it incurred in having to defend the lawsuit

---

[3] After the Bushes filed a traditional motion for summary judgment on their claims, they filed a supplement in which they clarified that they "do not seek summary judgment on damages and attorney's fees" and that "[t]hese issues are reserved for trial."

despite the alleged settlement, as well as attorney's fees incurred in prosecuting the counterclaim itself. Johnson-Sewell attached its counsel's affidavit to prove up the amount of these fees. On the same day, Johnson-Sewell also filed a no-evidence summary-judgment motion challenging elements of each of the Bushes' causes of action. On April 24, the Bushes filed a response and counter-motion addressed solely to the contractual theories asserted in Johnson-Sewell's traditional motion. The Bushes did not file a response explicitly directed to the dealership's no-evidence motion.

The district court held a single hearing on all of the summary-judgment motions on May 14, 2007. Following the hearing, the court orally stated that it would grant Johnson-Sewell's traditional motion, sustain one of the dealership's evidentiary objections, and grant the dealership's no-evidence motion as to damages. Thereafter, disputes arose among the parties regarding the form of the judgment. The Bushes filed an objection to the proposed judgment on grounds that it awarded Johnson-Sewell attorney's fees that were not segregated and limited to the amount the dealership incurred in prosecuting its breach-of-contract counterclaim. The district court ultimately overruled the Bushes' segregation objection and rendered final judgment:

- sustaining Johnson Sewell's objection to certain affidavit testimony from Lois Bush;

- denying the Bushes' summary-judgment motions;

- granting Johnson-Sewell's traditional summary-judgment motion;

- granting Johnson-Sewell's no-evidence summary-judgment motion "as it related to the elements of damages on each of Plaintiff's causes of action";

- awarding $33,036.00 to Johnson-Sewell—the total amount of attorney's fees it purported to establish in its counsel's affidavit—less a credit of $500.00, the amount of attorney's fees the dealership had agreed to pay the Bushes

5

under the purported settlement agreement, and awarding Johnson-Sewell conditional appellate attorney's fees; and

• ordering that the Bushes take nothing on any of their causes of action.

The Bushes subsequently filed a motion for reconsideration and for new trial. After a hearing, the district court overruled the motion. This appeal ensued.

## ANALYSIS

The Bushes bring four issues on appeal, contending that the district court erred in (1) granting Johnson-Sewell's traditional summary-judgment motion and in denying its counter-motion regarding the purported settlement agreement; (2) granting Johnson-Sewell's no-evidence motion as to damages; (3) awarding Johnson-Sewell unsegregated attorney's fees; and (4) failing to grant the Bushes' motion for partial summary judgment as to Johnson-Sewell's liability on their claims.

**Standard of review**

We review the district court's summary judgment rulings de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215-16. In deciding whether there is a disputed material fact issue precluding summary judgment, we take as true proof favorable to the non-movant, and we

6

indulge every reasonable inference and resolve any doubt in favor of the non-movant. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995).

Both Johnson-Sewell and the Bushes sought traditional summary judgment on issues on which they have the burden of proof. A movant seeking traditional summary judgment on its own cause of action or affirmative defense has the initial burden of establishing its entitlement to judgment as a matter of law by conclusively establishing each element of its cause of action or affirmative defense. *See M.D. Anderson Hosp. & Tumor Inst. v. Wilrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam) (citing *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222-23 (Tex. 1999); *Oram v. General Am. Oil Co.*, 513 S.W.2d 533, 534 (Tex. 1974)). If the movant meets this burden, the burden shifts to the non-movant to raise a genuine issue of material fact precluding summary judgment. *See id.*

Johnson-Sewell also obtained a no-evidence summary judgment "as it related to the elements of damages on each of Plaintiff's causes of action." A no-evidence motion for summary judgment must be granted if, after an adequate time for discovery, (1) the moving party asserts that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial, and (2) the nonmovant fails to produce more than a scintilla of summary-judgment evidence raising a genuine issue of material fact on those elements. Tex. R. Civ. P. 166a(i). A no-evidence summary judgment is essentially a directed verdict granted before trial, to which we apply a legal-sufficiency standard of review. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003); *Perdue v. Patten Corp.*, 142 S.W.3d 596, 603 (Tex. App.—Austin 2004, no pet.). A no-evidence summary judgment will be sustained when:

7

(1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch*, 118 S.W.3d at 751. More than a scintilla of supporting evidence exists if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *Id*. "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id*. (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

When, as here, both parties move for summary judgment on overlapping issues and the district court grants one motion and denies the other, we review the summary-judgment evidence presented by both sides, determine all questions presented, and render the judgment that the district court should have rendered. *Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004).

**The settlement agreement**

In their first issue, the Bushes urge that the district court erred in holding that, as a matter of law, the parties formed an agreement to settle their causes of action and granting Johnson-Sewell's traditional summary-judgment motion on that ground. They further assert that the parties' correspondence establishes the contrary proposition as a matter of law—the parties did not form a settlement agreement—and that the district court erred in denying their counter-motion for summary judgment on that issue.

8

To establish the existence of an enforceable contract, a party must prove (1) an offer, (2) acceptance of the offer, (3) mutual assent or "meeting of the minds" regarding the subject matter and essential terms of the contract, and (4) consideration, or mutuality of obligations. *See Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007); *Harco Energy, Inc. v. Re-Entry People, Inc.*, 23 S.W.3d 389, 392 (Tex. App.—Amarillo 2000, no pet.) (*citing Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 408-09 (Tex. 1997)).[4] The Bushes argue that the summary-judgment evidence establishes that, as a matter of law, there was no meeting of the minds to settle their claims in exchange for rescission and no valid acceptance—or that at least Johnson-Sewell failed to establish these elements as a matter of law so as to be entitled to summary judgment.

The Bushes argue first that Johnson-Sewell's purported acceptance of their rescission offer was ineffective because the dealership "skipped over" a condition on the offer that was never fulfilled. They emphasize the first clause of the paragraph of their DTPA demand letter containing their rescission offer:

> *If you cannot provide a vehicle acceptable to the Bushes*, they demand that you rescind the sales transaction, return their trade-in vehicle (with a depreciation or rental payment if it has been damaged or driven a significant number of miles), return any cash they paid, pay or cancel their purchase note, reimburse them for any payments made on the note (both principle and interest), and pay their attorney's fees.

---

[4] The existence of an enforceable contract, in turn, is one of the elements of a breach-of-contract cause of action: (1) the existence of a valid contract between the parties, (2) the plaintiff performed or tendered performance, (3) the defendant breached the contract, and (4) the plaintiff was damaged as a result of the breach. *New York Life Ins. Co. v. Miller*, 114 S.W.3d 114, 121 (Tex. App.—Austin 2003, no pet.).

(Emphasis added.) "Provide a vehicle acceptable to the Bushes," the Bushes urge, must be read in conjunction with the preceding paragraph:

> The Bushes want what they paid for. However, as one last attempt at reconciliation, the Bushes would *consider* [emphasis in original] taking the available vehicle if it is modified to include a premium sound system, heated and cooled seats, and adequate pin striping, subject to their right to inspect and ensure the vehicle is to their satisfaction, and if you pay their attorney's fees ($500 at this point).

The "available vehicle," the Bushes maintain, refers to the Aviator located in Houston that had been one of the subjects of the parties' prior negotiations. Thus, the Bushes reason, "provide a vehicle acceptable to the Bushes" meant that Johnson-Sewell was to provide the Houston Aviator with the modifications they requested, subject to their inspection.

Their rescission offer, the Bushes continue, was effective only if Johnson-Sewell "cannot" or could not provide them the Houston Aviator with the requested modifications. Citing dictionary definitions and cases from other jurisdictions, the Bushes argue that "cannot" denotes an inability to provide the specified vehicle despite a bona fide, good faith effort, not merely an unwillingness to do so.[5] They urge that, in other words, "'cannot' means that the Dealership is

---

[5] *See Di Benedetto v. Di Rocco*, 93 A.2d 474 (Pa. 1953) ("'Cannot' connotes, not unwillingness, but inability."); *Jamison v. Concepts Plus, Inc.*, 552 A.2d 265, 270 (Pa. Super. Ct. 1988) ("we find the word "inability" in the agreement of sale before us to mean objective inability, rather than subjective unwillingness or an absence of any obligation whatsoever"); *Motor Vehicle Accident Indemnification Corp. v. Gianni*, 280 N.Y.S.2d 808, 810 (N.Y. Sup. Ct. 1965) ("'Cannot be ascertained' means incapable of being ascertained. To establish that the identity cannot be ascertained, it must appear that some effort was made to ascertain the identity."). The Bushes also refer us to definitions for "cannot" in the online dictionaries www.m-w.com ("can not") (Merriam-Webster On-Line Dictionary (http://www.merriam-webster.com/dictionary/cannot) (last visited November 17, 2008)), www.wiktionary.org ("1. can not; am/is/are unable to. 2. to forbid, not permit") (Wiktionary a Wiki-Based Open Content Dictionary (http://en.wiktionary.org/wiki/cannot)

expected to make a bona fide but unsuccessful effort to obtain the AWD vehicle from Houston." The Bushes contend that the summary-judgment evidence establishes as a matter of law that Johnson-Sewell made no such effort to obtain the Houston Aviator before purporting to accept their "alternative rescission proposal," or that at least fact issues preclude summary judgment for the dealership. The Bushes emphasize that Johnson-Sewell's sole summary-judgment evidence on this point is a single statement by Robert Sewell in his affidavit on which he did not elaborate: "JSFLM determined that it could not provide a vehicle acceptable to the Plaintiffs." They also point to deposition testimony of Johnson-Sewell personnel to the effect that the Houston Aviator was "available" and that it was, to some extent, possible to bring the vehicle to the dealership.

Johnson-Sewell disputes the Bushes' interpretation of the clause "If you cannot provide a vehicle acceptable to the Bushes." The dealership first observes that the Bushes did not demand or offer in their preceding paragraph to settle in exchange for the modified "available vehicle," but emphasized only that they would "*consider* taking" that vehicle if the dealership made the requested modifications and offered it to them. This is not an offer, Johnson-Sewell argues, but at most an invitation to further negotiations. The sole offer the Bushes made, Johnson-Sewell contends, was their rescission offer (". . . they demand that you rescind the transaction . . ."). Moreover, construing "If you cannot provide a vehicle acceptable to the Bushes" in the context of the preceding paragraph, Johnson-Sewell argues, was not a condition that the dealership provide (or try to provide) the Bushes with the specified vehicle. Instead, Johnson-Sewell suggests, the

(last visited November 17, 2008)), and www.dictionary.com ("a form of can not") (Dictionary.com an Ask.com Service (http://dictionary.reference.com/browse/cannot) (last visited November 17, 2008)).

11

clause merely indicated that if it would not enter further negotiations regarding the "available vehicle," it could accept the rescission offer. In this regard, Johnson-Sewell has stressed that the clause does not purport to condition the Bushes' rescission offer on the Bushes' actions (e.g., "if the Bushes reject the available vehicle . . ."), but on Johnson-Sewell's actions.

In determining whether the parties have formed a contract through offer, acceptance, and mutual assent to the contract terms, we rely on "the objective standard of what the parties said and how they acted, not on their subjective state of mind." *Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 589 (Tex. App.—Austin 2007, pet. denied); *see* Restatement (Second) of Contracts § 24 (1981) ("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."); *see also Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006) ("As with any other contract, the parties' intent is governed by what they said, not by what they intended to say but did not."). We look at the purported contract in its entirety, considering each part in relation to every other part so that the effect of each part on others may be determined and that no part will be rendered meaningless. *See City of Keller v. Wilson*, 168 S.W.3d 802, 811 (Tex. 2005); *Valence Operating Co.*, 164 S.W.3d at 662. Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Id*. The construction of an unambiguous contract is a question of law for the court. *Willis v. Donnelly*, 199 S.W.3d 262, 275 (Tex. 2006).

We begin by observing that the clause in question begins with the word "If." "If," as the Bushes observe, is an indicator of a condition for the terms that follow. *See Criswell*

12

*v. European Crossroads S. Ctr.*, 792 S.W.2d 945, 948 (Tex. 1990). The meaning of the condition "you cannot provide a vehicle acceptable to the Bushes," as both parties suggest, would be informed by the preceding paragraph. The "vehicle acceptable to the Bushes," in context, refers to "the available vehicle if it is modified to include a premium sound system, heated and cooled seats, and adequate pin striping, subject to their right to inspect and ensure the vehicle is to their satisfaction." Drawing reasonable inferences in the Bushes' favor, "the available vehicle" refers to the Aviator located in Houston that had been the subject of prior negotiations. *See, e.g.*, *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 591 (Tex. 1996) ("In determining the parties' agreement, we are to examine all parts of the contract and the circumstances surrounding the formulation of the contract."). These terms would suggest that the Bushes conditioned their rescission offer on whether Johnson-Sewell "cannot provide" them this vehicle.

The ordinary meaning of "cannot," as the Bushes suggest, may denote inability, but the term also may have a broader or more colloquial connotation of lacking discretionary permission that is equivalent to or used interchangeably with "may not." *See* Definition of "can," Webster's Third New International Dictionary 323 (1986) ("have permission to—used nearly interchangeably with *may* <you *can* go now if you like>"). Viewed in the context in which it is used in the Bushes' DTPA demand letter, we conclude that "If you *cannot provide* a vehicle acceptable to the Bushes" objectively manifested the latter meaning—*i.e.*, intent to give Johnson-Sewell the choice between engaging in further negotiations regarding the Houston Aviator or accepting their offer to rescind the sale. Nowhere in their letter did the Bushes offer or demand that Johnson-Sewell provide them the modified Houston Aviator. To the contrary, the Bushes stressed that they "would *consider*

13

taking"—again, emphasis in the original—"the available vehicle if it is modified to include a premium sound system, heated and cooled seats, and adequate pin striping, subject to their right to inspect and ensure the vehicle is to their satisfaction, and if [Johnson-Sewell] pay[s] their attorney's fees ($500 at this point)." This language is a classic example of a request or solicitation of an offer—mere preliminary negotiations. Restatement (Second) Contracts § 26, ill. 4 ("A writes B, 'I am eager to sell my house. I would consider $20,000 for it.' . . . A's letter is a request or suggestion that an offer be made to him."). Reading these terms together, the "condition" in the first clause of the following paragraph is whether Johnson-Sewell "cannot" make this offer and pursue further negotiations. Even if Johnson-Sewell made this offer, furthermore, the Bushes were obligated only to "consider taking" the modified vehicle.

Under the Bushes' interpretation of the clause, their rescission offer—the only offer they made in their DTPA demand letter—would be ineffective unless Johnson-Sewell was first "unable," after a good faith effort, to make the Bushes the offer they solicited in the preceding paragraph—an offer that the Bushes were obligated only to "consider taking." We observe that contractual conditions are generally disfavored, and that we are to avoid construing a provision as a condition when another reasonable construction is possible. *Criswell*, 792 S.W.2d at 948. We conclude that the Bushes' construction of the clause is not reasonable. Instead, the reasonable construction is simply that the Bushes offered to settle their claims in exchange for Johnson-Sewell fulfilling their rescission terms if the dealership was not going to make the Bushes the offer they had solicited in the preceding paragraph.

14

In the alternative, the Bushes argue that Johnson-Sewell's response to their rescission proposal varied from the terms of their offer and, thus, constituted a rejection of the offer rather than an acceptance. *United Concrete Pipe Corp. v. Spin-Line Co.*, 430 S.W.2d 360, 364 (Tex. 1968). The Bushes emphasize that they mentioned six terms in their offer: (1) rescind the sales transaction; (2) return their trade-in vehicle (with a depreciation or rental payment if it has been damaged or driven a significant number of miles); (3) return any cash they paid; (4) pay or cancel their purchase note; (5) reimburse them for any payments made on the note (both principal and interest); and (6) pay their attorney's fees (which, as indicated in the preceding paragraph, were $500). In Johnson-Sewell's response to the Bushes' DTPA demand letter, it "agreed to meet the terms spelled out on Page 4, Paragraph 4 of the above-referenced letter" by: (1) "[r]escinding the transaction"; (2) returning the trade-in vehicle (noting that "[t]he vehicle has not been driven a significant number of miles so there would be no rental due" and "[t]he vehicle has not depreciated in that we spent our monies on the vehicle to make it ready for sale. . . ."); (3) "[m]aking their payments to Ford Credit while we had the vehicle (2 payments)"; and (4) "[p]aying the $500.00 attorney fee." The Bushes argue that Johnson-Sewell's purported acceptance omitted mention of the third and fourth terms of their offer, returning any cash they paid and paying or cancelling their purchase note. Johnson-Sewell responds that those terms were encompassed in its promise to "rescind" the transaction. It also points to its statements that it "agreed to meet the terms spelled out on Page 4, Paragraph 4 of the [Bushes'] letter" and that it was "ready, willing and able to meet the terms of [the Bushes'] offer to settle." We agree with Johnson-Sewell that its response letter constituted a valid acceptance of the Bushes' rescission offer. *See* Definition of "rescind," Webster's, *supra* 1930 ("rescind" means

15

"to abrogate (a contract) by tendering back or restoring to the opposite party what one has received from him (as in the case of fraud, duress, mistake or minority)").

We overrule the Bushes' first issue. Because summary judgment may be affirmed based on Johnson-Sewell's breach-of-contract counterclaim and affirmative defense of estoppel by contract, we need not reach the Bushes' second issue challenging the no-evidence ground relating to damages. Similarly, because the district court did not err in granting summary judgment on these grounds, we overrule the Bushes' fourth issue, in which they contend the district court erred in denying their partial summary-judgment motion as to liability on their affirmative claims.

**Segregation of attorneys' fees**

In their third issue, the Bushes assert that the district court erred by awarding Johnson-Sewell attorney's fees that were not segregated so as to be limited to those the dealership incurred in prosecuting its breach-of-contract counterclaim and to exclude those incurred in defending against claims for which attorney's fees are not recoverable. Johnson-Sewell counters that the Bushes waived this complaint by failing to timely present it by written motion, answer, or other response to its summary-judgment motion in advance of the hearing. Tex. R. Civ. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1978). The dealership further asserts that it was not required to segregate its attorney's fees because its successful prosecution of its breach-of-contract counterclaim defeated all of the Bushes' claims. We agree that the Bushes did not preserve this complaint by timely raising it in response to Johnson-Sewell's summary-judgment motion. The Bushes point out that some of our sister courts have permitted segregation complaints to be raised by post-judgment motion in the context of bench trials. *See, e.g.*,

*O'Farrill v. Gonzalez*, 974 S.W.2d 237, 249 (Tex. App.—San Antonio 1998, writ denied). We disagree with the Bushes that this procedural context is analogous to summary judgment, in which any objections or responses to summary judgment must be in writing and before the trial court at the hearing. *See Clear Creek Basin Auth*., 589 S.W.2d at 677. We overrule the Bushes' third issue.

## CONCLUSION

Having overruled the Bushes' issues, we affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Puryear and Pemberton

Affirmed

Filed:   December 12, 2008